## W. S. EXON V. THE STATE.

*No. 474.    Motion for Certiorari Decided May 26.*
*Decided on the merits June 13.*

| 33 | 461 |
| f35 | 397 |
| f35 | 433 |
| 36 | 186 |
| f37 | 417 |
| 37 | 667 |

1. **Practice on Appeal—Certiorari to Perfect Record—Bills of Exception.—**. Where, on appeal, it is made to appear, by the affidavit of reputable counsel, that numerous exceptions were reserved at the time to improper argument by the prosecuting attorney in his address to the jury, and that within three days thereafter, and before adjournment for the term, proper bills of exception were prepared from the stenographer's notes and tendered to the district attorney and district judge, who refused, the former to agree to and the latter to approve the same; whereupon the same were signed by bystanders, one of whom was the stenographer, and filed by the clerk, who subsequently erased his file mark: *Held,* that a writ of certiorari would be granted commanding the clerk to send up, as part of the record, copies of the bills of exceptions and papers relating thereto, properly certified under his hand and official seal.

2. **Practice as to Preparation and Authentication of Bills of Exception Properly Signed by Bystanders, When—Statutory Law.—**The practice in the trial court as to the mode and manner of reserving bills of exception to the rulings of the court is provided in chapter 16 of the Revised Statutes, and especially in articles 1363 to 1367.

1. The bill must be reduced to writing and presented to the judge for allowance and signature during the term, and within ten days after the conclusion of the trial.

2. The bill, after preparation, must first be submitted to the adverse party or his counsel, and if found correct, shall be signed by the judge and filed with the clerk during the term.

3. Should the judge find the bill incorrect, he shall suggest corrections to the party who drew it, and if they are agreed to he shall sign the same, and it will be filed.

4. Should the party not agree to the corrections, the judge shall return the bill, with his refusal indorsed thereon, and shall make out, sign, and file with the clerk a bill of exceptions presenting his ruling as it actually occurred.

5. Should the party be dissatisfied with the bill filed by the judge, he may procure the signatures of three bystanders to attest the correctness of the bill which he presented to the judge, and file the same as part of the record.

6. The trial judge can not contradict or qualify the bill of exceptions without consent of counsel.

3. **Same—Practice on Appeal.—**If the court refuses the bill of exceptions as presented, and fails to file one in lieu thereof, the bill which was presented and refused by him will be considered and treated on appeal as if it had been approved. Following Belo v. Wren, 63 Texas, 728.

4. **Same—Bystanders.—**The right to resort to bystanders arises only when the court has refused the offered bill of exceptions, and filed his own bill in lieu thereof.

5. **Rape—Defendant's Wife as a Witness—Impeachment of.—**On a trial for rape, where defendant's wife has testified as a witness in his behalf, she may, for the purpose of impeaching her character and credibility, be asked whether she had not lived with defendant as his mistress before marriage.

6. **Same—Contradictory Statements to Grand Jury—Charge.—**On a trial for rape, where the wife testifies in behalf of her husband, she may be impeached by proof of contradictory statements made by her when a witness before the grand jury; but where such testimony is admitted the jury should be carefully cautioned and instructed in the charge as to the only purposes for which the evidence was admitted, to wit,

impeachment of the woman, and that they should not consider it for any other purpose, either as evidence of the main fact nor as corroboration of the prosecutrix.

7. **Abuse of Argument by Counsel—Improper Remarks.**—Inflammatory appeals to the passions of the jury are especially unwarranted ·and reprehensible where the facts in evidence invoke· the sober, deliberate judgment of a jury desiring to act ·justly, rather than the hasty decision of men aroused to indignant action.

APPEAL from the District Court of Bexar.    Tried below before Hon. GEORGE H. NOONAN.

The indictment in this case charged appellant, W. S. Exon, with rape upon one Martha Hein.    At his trial appellant was convicted, and his punishment assessed at a term of fifteen years in the penitentiary.

The evidence in substance shows that Martha Hein, the prosecutrix, attained her twelfth year of age in July, 1893.    Her father had died in Berlin, Germany, and his parents, who lived at the village of Welfare, in Kendall County, Texas, sent money to the widow of their son with which to bring herself and two children to Texas.    They reached the home of the grandparents in the spring of 1882.    Martha's mother left her with her grandparents at Welfare, shortly after their arrival; and the grandparents raised the child, she remaining with them until the 14th day of April, 1893.    During these years that she lived with her grandparents she never recollected to have seen her mother, or that her mother had visited them.    The testimony does not develop where her mother was during all these years, but it does disclose the fact that during that period she had married the defendant, W. S. Exon, and that they were residing on a place on the Salado several miles west of San Antonio.    Sometime in the spring of 1893 Exon was near the village of Welfare, in Kendall County, and called to see Martha Hein and her grandparents.    He found her to be a stout, healthy, buxom ·country lass, well grown for her age, and weighing in the neighborhood of 180 pounds.    Martha's grandparents had raised her as well as their circumstances would permit, she having been at school during a part of the time.    A short time after this visit of Exon's he and his wife (Martha's mother) both came to Welfare, and after staying a day or so, on the 14th day of May returned to their home on the Salado, taking Martha with them.    She testified, that on the day after she reached the defendant's house her mother went off to a neighbor's, and while she was at work in the kitchen defendant came in, having a pistol; took hold of her by the leg, threw her down, and ravished her, threatening to shoot her if she hallooed.    She says when her mother came back she told her about it, and her mother told her "to go off and shut her mouth; that she did not believe her."    She swore that the defendant ravished her every other day from the 15th of May regularly up to the 16th day of January, 1894.    She says that each of his assaults upon her was without her consent; that oftentimes her clothing was bloody from the effects of his violence; and that each time

when she would tell her mother of his outrages her mother would blame her and not Exon, and scold *her* about it, and say she was a bad girl. That on one occasion, while her mother was sleeping on the front porch, and about midnight, while defendant was ravishing her, she screamed and her mother came in and caught him at it; that her mother scolded her, and said she was to blame; was a bad girl; and she did not scold Exon. She said that her grandmother on one occasion came down and spent the night at defendant's house; that she slept with her grandmother that night; that she did not tell her grandmother, because she thought that, if *her mother* did not care for her, nobody else would. For the same reason she did not tell her brother Max, a boy of some 14 or 15 years of age. She went to school about two weeks after she went to live with Exon and wife, and when asked why she did not tell her teacher, her answer was: "I did not, because I thought if my own mother did not care for me nobody else would. I had told my own mother." She stated that Exon watched her constantly, and gave her very little opportunity of being with others. Generally when Exon was not present her mother was. That she ran away the 6th of January and came to her brother Max, who was working in the city of San Antonio. That he took her to the house of Mrs. Metz. She told her brother that they had treated her badly at home, and that she had to leave, but she did not tell him that Exon had been ravishing her. Mrs. Metz testified, that after Martha was brought to her house on the 6th day of January, she did not at first tell her about Exon's treatment, but on the Wednesday night following she told her that Exon had used her; had always watched her, and told her if she hallooed he would shoot her. She meant by that, that he had criminal connection with her.

Dr. Withers, county physician of Bexar County, and Dr. Menger, city physician of San Antonio, testified to their examinations made of the person of the girl in the early part of January. They found that the vagina had been dilated a great deal; that the hymen had been ruptured; and by using a speculum they found that the canal could be dilated for six or seven inches; "and it was evident that there had been copulation going on for sometime."

Mrs. Exon's testimony for the defendant is as follows: "My name is Eliza Exon. I am the wife of the defendant Exon. Martha Hein is my daughter. Martha Hein never did at any time make complaint to me that my husband was raping her. I never did at any time catch them having criminal connection with each other."

Question: "Did you not swear before the grand jury of this county, in the investigation of this case, that at 4 o'clock on a certain morning you caught your child and Mr. Exon in a compromising position, and you called to him and said, 'Oh, Willie, Willie, what are you doing?'" After argument, this question was excluded by the court.

Question: "Did not you tell Mrs. Mause, before or since the trial of this case about a month ago, at her house, that by the way he had done with that girl that he had fixed his soup, and now he had to eat it?" After argument, this question was also excluded by the court.

The above shows the most important matters of evidence pertaining to the case.

Defendant reserved seven bills of exception, which cover about forty pages of closely typewritten matter, and are too voluminous to be reproduced. They involved mainly exceptions to the argument of the prosecuting attorneys to the jury. These bills of exception were refused by the court, but were proven up by bystanders, and appear to have been filed by the district clerk, but the file mark was afterwards erased.

*Flemming, Camp & Ingrum,* for appellant.—1. The defendant was prevented from having a fair and impartial trial on account of the argument of the district attorney, as shown by defendant's bills of exceptions numbers 3, 4, 5, 6, and 7, which are made a part of this motion, in that he discussed a great many questions that were entirely outside of the record, to which the defendant's counsel had no opportunity of replying; because in his closing speech he alluded to the fact that the defendant had not testified, and because his whole speech was full of vituperation and abuse of the defendant, and was calculated to arouse the passions and inflame and prejudice the minds of the jury against the defendant, and prevent the defendant from having a fair and impartial trial, as guaranteed to him by the Constitution and laws of this State. Bryson v. The State, 20 Texas Crim. App., 566; Gazley v. The State, 17 Texas Crim. App., 267; Crawford v. The State, 15 Texas Crim. App., 501.

2. The verdict of the jury is contrary to the evidence, in this, that the defendant was convicted on the uncorroborated testimony of the prosecuting witness, whose testimony was successfully impeached by the testimony of Mrs. Stout, Max Hein (brother of the prosecuting witness), Mrs. Andrew Ackermann, Andrew Ackermann, Miss Mollie Works, Mrs. Flamm, Mr. Mullen, Mr. Wright, and her own mother, Mrs. Exon; and because the prosecuting witness swore on the trial that the defendant had raped her on every other day from the 15th day of May to the 6th day of January, 1894, by force and against her consent, and that she bled profusely every time he raped her, it being impossible, and against nature, that such a thing could have been done for such a length of time without either killing or prostrating her so that she would have died or become insane from the effect of it.

3. It was not shown by the testimony that the prosecuting witness ever complained to any one that the defendant had assaulted her and raped her until after the affidavit was made against defendant and he was arrested, although the testimony shows that she had repeated

opportunities to do so; first, to her grandmother; second, to her brother; third, to Mrs. Stout; fourth, to Mrs. Ackermann; fifth, to her school teacher, Miss Works; and at divers times when she was with these parties, while she swears that this rape was going on and failed to make complaint. Topolanck v. The State, 40 Texas, 160; Gazley v. The State, 17 Texas Crim. App., 267; Montresser v. The State, 19 Texas Crim. App., 281; Sharp v. The State, 15 Texas Crim. App., 171; Nicholas v. The State, 23 Texas Crim. App., 317; Lawson v. The State, 17 Texas Crim. App., 292; Allen v. The State, 18 Texas Crim. App., 120; Dickey v. The State, 21 Texas Crim. App., 430.

4. The court erred in permitting the district attorney to ask the wife of the defendant, when she was on the witness stand, if it was not a fact that she lived with the defendant as his mistress for a long time before they were married, out at Government hill, and in the house with another woman; and erred in allowing the district attorney to ask the defendant's wife, when upon the witness stand, over the objection of the defendant's counsel, the following question: "Did you not swear before the grand jury of this county, in the investigation of this case, that at 4 o'clock on a certain morning you caught your child and Mr. Exon in a compromising position, and you called him and said, 'O, Willie, Willie, what are you doing?'" as shown by defendant's bill of exception number 1; because the said question was illegal, and the effect of said question was to prejudice the defendant in the minds of the jury; and this was emphasized when the district attorney, in replying to the argument of the defendant's counsel in objecting to the question, said in the presence of the jury, that "the foreman and every member of the grand jury will swear to it;" and the effect and injury was still further emphasized by the district attorney in his closing argument on the same question, and it was all calculated to prevent the defendant from having a fair and impartial trial. Willson's Crim. Stats., art. 735, sec. 2442; Bryson v. The State, 20 Texas Crim. App., 566; Washington v. The State, 17 Texas Crim. App., 197.

5. The court erred in refusing to sign the defendant's bills of exceptions numbers 1, 2, 3, 4, 5, 6, and 7, and in refusing and failing to make out and sign and file with the clerk such a bill of exception as would in his opinion present the matter in accordance with the truth of the facts, as required by articles 1365 and 1366 of the Revised Civil Statutes of Texas, and article 686 of the Code of Criminal Procedure, in this, that the effect of such conduct on the part of the judge was to prevent the defendant from having his case heard on appeal, and the error and injustice done him by the court below corrected and revised by our Court of Criminal Appeals.

6. The court erred in refusing to indorse on the bills of exceptions presented by the defendant to him before the adjournment of the court, within two days after the trial, his reasons for refusing them,

but instead simply put as indorsement on the back of each one of said bills of exceptions the following, to wit: "Refused. G. H. Noonan, Dis. Judge," in that it prevents the defendant from assigning as error said reasons, and prevented him from having said error revised on appeal.

7. The court erred in having the clerk of the District Court erase from each of the bills of exceptions the file marks and the official signature of said clerk after he had filed the same, the defendant having first presented them to the judge and he having indorsed his refusal thereon, and the defendant also having, in accordance with article 1367 of the Revised Civil Statutes, and article 686 of the Code of Criminal Procedure, procured the same to be attested by three reputable citizens of Bexar County, bystanders, and presented them to the clerk, and had his file marks indorsed thereon, before the adjournment of the court, and within two days after the trial of said cause, the effect of which conduct on the part of the judge is to deprive defendant of having the error of said court revised on appeal. Willson's Crim. Stats., art. 686; Sayles Civ. Stats., arts. 1366, 1367; McDow v. The State, 10 Texas Crim. App., 98; Lindley v. The State, 11 Texas Crim. App., 284.

*R. L. Henry*, Assistant Attorney-General, for the State.

### ON MOTION FOR CERTIORARI.

SIMKINS, JUDGE.—Appellant moves the court to grant him a writ of certiorari to the clerk of the District Court of Bexar County, commanding him to incorporate certain bills of exceptions in the transcript of the case. It appears by affidavit of reputable counsel, filed in behalf of said motion, that a number of exceptions were taken to the argument of counsel for the State, and within three days thereafter, and before the adjournment for the term, he prepared bills of exceptions and tendered them to the district attorney and the district judge, the Hon. George H. Noonan; that the district attorney refused to read them, and the district judge read two, but refused to read the other six, and indorsed the refusal on the same; that counsel then procured bystanders to sign the bills of exceptions, and the same were duly filed by the clerk; that subsequently, without notice to counsel, and in his absence, the district clerk erased his filing mark from said bills of exceptions by order of the district judge. It is further shown, that the bills of exceptions were prepared from the notes of the stenographer who took down the argument and evidence in the case; and the said stenographer and two other reputable citizens signed said bills of exceptions as bystanders. We are of opinion that the order prayed for should be granted, and Henry Umschied, clerk of the District Court of Bexar

County, is commanded forthwith to forward to this court, as a part of the record of said cause, a copy of the said bills of exceptions and papers relating thereto, duly certified, under his hand and official seal.

*Certiorari awarded.*

Judges all present and concurring.

ON THE MERITS.

SIMKINS, JUDGE.—Appellant was convicted of rape, and his punishment assessed at fifteen years in the State penitentiary. In obedience to the writ of certiorari issued from this court, the bills of exceptions signed by bystanders were sent up by the clerk of the District Court of Bexar County, and are now before us. The record shows that said bills of exceptions, seven in number, relate entirely to the argument of the district attorney in the case. They were each indorsed "Refused," by the district judge, and were subsequently attested by three bystanders, and filed April 20, 1894, but the file marks were erased. The verdict was rendered on the 18th of April, 1894. No reason is given for the refusal or the erasure of the file marks.

1. The question to be decided is, what consideration is to be given to a bill of exceptions which the court has refused to approve as presented, and failed to file one in lieu thereof? Whatever may have been the practice prior to the adoption of the Revised Statutes (Paschal's Digest, articles 217–219; Houston v. Jones, 4 Texas, 170), it is now the statutory right of a party taking a bill of exceptions, if not permitted to do so at the trial, to write out and present the same to the judge for his signature during the term, and within ten days after the conclusion of the trial (Revised Statute, article 1363); and the "conclusion of the trial" is held to be after verdict, or after overruling motions for a new trial or in arrest of judgment, where the same are filed. Willson's Crim. Stats., sec. 2366; Shubert v. The State, 20 Texas Crim. App., 323; Blum v. Schram, 58 Texas, 524. The statute further declares, that when the judge finds the bill so presented to be incorrect he shall suggest the corrections; and, if not agreed to by the party presenting the bill, the court shall return the bill with his refusal indorsed thereon, and shall make out, sign, and file with the clerk such a bill of exceptions as will, in his opinion, present the ruling of the court as it actually occurred. Rev. Stats., arts. 1365, 1366. Should the party be dissatisfied with the bill of exceptions filed by the judge, he may then resort to bystanders, as provided in article 1367, Revised Statutes. Under the plain terms of the statute, the right to resort to bystanders arises only when the court has refused the offered bill of exception, and filed his own bill in lieu thereof. Until that is done, the counsel can not assume that the court will act unfairly in preparing the bill, or that he may not agree to the bill as filed by the court. When there-

fore, he has within ten days after conclusion of the trial prepared and presented his bill of exception, and it has been refused, he has done all that can be required of him until the court acts in the premises as required by the statute. The defendant can not be made to suffer from the neglect of the judge; and if the court refuses the bill as presented and fails to file one in lieu thereof, then we will certainly look to the bill so presented and refused to ascertain whether it contains merit, and treat it as if it in fact had been approved. Belo v. Wren, 63 Texas, 728. If the court should decline to indorse a refusal on the bill or refuses to permit it to be filed, appellant has simply to resort to his writ of certiorari for redress. Much of the difficulty with reference to bills of exceptions would be obviated if the court would permit them to be taken at the time the exception is made, and not wait until the result of the case has magnified the importance of the supposed error, when judicial action frequently invokes adverse criticism. It should always be remembered that the trial judge, while he may state reasons for his action, has no authority to contradict or qualify the bill of exceptions without consent of counsel (Revised Statutes, article 1366); and while such consent will be presumed when counsel accepts the bill after it has been changed by the court (Jones' case, ante, p. 7), yet counsel may insist that his bill be approved or refused without modification, and when refused, and after the court files his bill, then counsel will be allowed time sufficient to file a bystanders' bill, and, when the same is contested (Revised Statutes, article 1367), to have reasonable time to obtain supporting affidavits.

2. The evidence of the prosecutrix, who is a stepdaughter of the appellant, and under the age of 12 years, tended to prove that appellant had for months continued criminal intercourse with her until she ran away. There is but little corroborating testimony, except that her brother testified to having seen her crying, and she stated she dared not tell why, and the testimony of physicians as to her physical condition after she ran away. Her testimony is in many respects incredible, and contradicted by other witnesses. It is shown by bill of exceptions number 1, and corroborated by the statement of facts, that Mrs. Exon, the wife of appellant, was placed on the stand by the defense, and asked by him whether her daughter had ever complained of her husband raping her, or whether she had ever caught her daughter and Exon having criminal connection with each other, to which questions she replied, "No, sir." On cross-examination the State asked witness whether she had not lived with defendant as his mistress before marriage, and, upon objection, the court excluded the question. We think the court erred. The evidence went to the character and credibility of the witness. The State then asked the following question: "Did you not swear before the grand jury of this county, on the investigation of this case, that at 4 o'clock on a certain

morning you caught your child and Exon in a compromising position, and you called out to him, and said, 'O, Willie, what are you doing?'" Appellant objected, on the ground that the grand jury had no right to call the wife as a witness against her husband, and what she stated there could not be proven. In reply to the objection and argument of appellant's counsel, the district attorney said, in the hearing of the jury, that "the foreman of the grand jury, and every member thereof, will swear to it." The court sustained the objection, but appellant insists that he was greatly injured and prejudiced by the questions and remarks of the district attorney, and by the fact that, although the questions were excluded by the court, the district attorney, in his closing argument, commented on them as being true, over appellant's protest and objections. While it is true that the grand jury had no right to compel Mrs. Exon to testify against her husband, it does not follow that statements made by her to the grand jury, or to any one else, can not be used to impeach her when she testifies directly to the contrary on the trial. Appellant himself placed her on the stand as a witness, and, for the purpose of impeaching her daughter's testimony, witness was asked whether she ever, at any time, caught her husband and daughter having criminal connection, and she denied it. Her daughter had testified that she and defendant had been caught by the witness in the act. Having testified for appellant as to this matter, it was competent for the State to attack her credibility by cross-examining her as to her own contradictory statements made as to the identical matter; but it was only admissible for such a purpose, for this statement, made in the absence of her husband, could in no way be used against him. In Washington's case, 17 Texas Criminal Appeals, 203, this court held statements made by the wife, in the absence of her husband, admissible to impeach her credibility, though the questions in that case were held inadmissible because she had not been examined in chief as to the matter about which she was cross-examined. But it is said by the court, that had the defense opened the inquiry as to the matter cross-examined into it would have been admissible as impeaching testimony. While it was testimony to prove a collateral fact, to wit, the want of credibility, it was inadmissible to prove the main fact, to wit, appellant's guilt; and it becomes the duty of the court to see that the jury are carefully cautioned as to the object of such evidence whenever it is offered. Now, the evidence in this case was excluded by the court, but the district attorney informed the jury that the entire grand jury would swear to the fact that Mrs. Exon stated she saw her husband and daughter in a compromising position at 4 o'clock one morning, and called to him. Not only was this highly improper, but the court did not exclude this statement, but allowed it to remain with the jury, emphasized by the speech of the district attorney. Had the testimony been properly admitted, the learned judge would no doubt

have cautioned the jury, as was not done. Washington's case, 17 Texas Crim. App., 204. There can be no question as to the importance of this testimony. The State had but slight corroborating testimony. The injured girl testified, that her stepfather forced her to yield to his desires every other day from May to January; that she cried and hallooed, but he frightened her with a pistol into submission; that she complained to her mother, who told her she didn't believe it; that one morning at 4 o'clock her mother caught her stepfather and herself in the act, but only blamed her for it. The statement of Mrs. Exon before the grand jury would therefore be naturally taken by the jury, unless carefully cautioned, to be strong corroboration of her daughter's evidence. It is therefore apparent that the court should so have instructed the jury, or excluded the testimony.

3. Making due allowance for the zeal of the district attorney and the excitement of the trial, and that he was fretted by the constant interruption of the counsel for defendant, we are of the opinion that the argument, as set forth in the bill of exceptions, was certainly objectionable in the inflammatory nature of its appeal to the passions of the jury. If the facts sworn to by the injured girl were true, it was rather a case invoking the sober, deliberate judgment of the jury, desiring to act justly, rather than the hasty decision of men aroused to indignant action by passionate invective.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.