## W. W. JENKINS V. THE STATE.

### No. 3527. Decided March 7, 1906.

**1.—Murder in the First Degree—Continuance—Immateriality of Testimony.**

Where upon a trial for murder, the defendant set out in his motion for continuance testimony that deceased might have been killed by some other person than defendant, but upon examination of the statement of facts, it was disclosed on appeal that this character of testimony was introduced, there was no error in overruling the motion. Nor was there error in refusing the continuance, where the facts expected to be proved by the absent witness were conceded by the State; neither was it material that another absent witness had seen a certain party on horseback near the place of the homicide.

**2.—Murder in the Second Degree—Charge of Court—Circumstantial Evidence.**

Upon trial for murder where the evidence showed an assassination, there was no error in not submitting a charge on murder in the second degree. Nor was it error to refuse a charge on circumstantial evidence where the evidence is positive as to the identification of defendant.

**3.—Same—Accomplice—Concealment.**

Where upon a trial for murder, the evidence showed that the chief State's witness on the night of the homicide at the inquest had denied any knowledge of who did the shooting, but on the trial explained why he did this, and then identified the defendant as the party who did the shooting, there was no error in refusing to charge on accomplice testimony. Mere concealment of a crime does not make one an accomplice.

**4.—Same—Misconduct of Jury—Defendant as a Witness.**

Upon a trial for murder, after the jury had retired to consider their verdict, one of the jurors asked why the defendant had not testified, and another immediately replied that the jury were not to consider this question in the case, as the defendant had a right to swear or not to swear; such matter afforded no cause for a reversal.

**5.—Same—Argument of Counsel—Allusions to Extraneous Matters.**

Where from the nature of the case the argument of counsel used, whether it be a fact stated pertaining to the case itself, or the injection of some illustration or inflammatory statement, obviously calculated to prove hurtful in the case to the defendant, a conviction should be reversed, although no written charge was asked on the subject, and no exception taken to the refusal of the court to give the same.

**6.—Same—Case Stated.**

Where upon trial for murder, the critical point in the case was the identification of the defendant as being the party who fired the shot which slew the deceased, it was reversible error to permit the State's attorney in his argument to reinforce this point in the State's case, by an illustration within the observation or experience of the State's counsel, and which had occurred in the locality of the trial, and under a judge whose approval, from his high character gave sanction to the illustration; and to permit the State's counsel to give the details of this transaction and identification, which were very similar to those presented in

the case on trial, and to assert the statement that the identification of the defend-
ant in the extraneous case must have been true, because he confessed on the
scaffold; and this, although no charge to ignore this argument was requested.

Appeal from the District Court of Panola. Tried below before the
Hon. Richard B. Levy.

Appeal from a conviction of murder in the first degree; penalty,
imprisonment in the penitentiary for life.

The opinion states the case.

*Buford & Buford, J. W. McDavid, A. G. Brooke, W. R. Anderson,*
and *R. T. Brown,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the
first degree, and his punishment assessed at confinement in the peni-
tentiary for life; hence this appeal.

It appears from the evidence that appellant bore a grudge against
deceased for some time preceding the homicide, and that appellant made
various threats at different times against the life of deceased. The
evidnce also shows that deceased and the sons of appellant were at outs
and on one occasion, a difficulty occurred between them. Deceased is
shown to have borne animosity against appellant also. Deceased,
Lee Langford (a young man), and appellant (justice of the peace),
both lived near the little town of Mt. Enterprise, in Rusk County.
On the evening of the homicide appellant was drinking, and to several
persons made dire threats to take the life of deceased. On that night,
deceased and Will Bussey were going hunting. They went by Mt.
Enterprise to get some tobacco. They first went to March & Co.'s store,
and then went to the store of J. T. Scroggins, where Alfred Bullard
was clerking. Several persons were in the store when they first came
in, but they all left, leaving Alfred Bullard, Bussey and appellant in
the store. Bussey bought some cider, and he and deceased were stand-
ing at the counter drinking the same. The counter ran north and south
in the room. The door was in the east. Bullard (the clerk) was on
the west side of the counter. Deceased was standing toward the
north end of the counter, and Bussey was standing four or five feet
distant from him, toward the south end of the counter. Deceased's
back was towards the door. Bussey turned rather sideways, toward
deceased, and, according to his testimony, was in a condition to look
toward the front of the building, and was looking toward the front
of the building when the firing occurred. In this position of the
parties a shot was fired from the door, and struck deceased in the
back which caused his death; whoever shot deceased immediately left.
Appellant was arrested the next day for the homicide. On the trial
the State relied on the circumstances showing a feud between the
parties and threats by appellant against deceased; and on the positive

testimony of Bussey, who stated that he recognized appellant as the party who fired the shot from the flash of the gun. This witness states that he was standing sorter facing Langford, and looking toward the door when the gun fired. By its flash, and the light therefrom, he recognized appellant as the man who fired the gun. He seemed at the time to be standing about the edge of the gallery. The muzzle of the gun appeared to be about six feet from the door of the store. It was a dark night and raining some. It was shown in connection with his testimony that there was an inquest held over the body of deceased that night; and witness testified that he did not know who it was that killed deceased. He explains this by stating that he told his father about it that night, and upon his advice, and because he was afraid appellant and his sons would use violence on him if he told what he knew, he did not tell that he recognized appellant until he went before the grand jury.

Appellant relied on an alibi, which he proved by a number of witnesses and also that other persons had animosity against deceased and were likely to have done the killing. This is a sufficient statement of the case to discuss the propositions arising from the assignments of error.

Appellant made a motion for continuance for the want of the testimony of Wm. Presley, John Ripley and Dr. S. H. Barnham. It is shown in the application that in response thereto, the State said it would have the witnesses for whom appellant craved a continuance brought into court, so that they might testify. A number were brought in, but the three mentioned were not procured. It may be conceded that the diligence was sufficient. Appellant said he could prove by the absent witness Presley, that he went from Weston, Texas, to Mt. Enterprise, to try to get Langford (deceased) to marry Ada Singleton; that he failed to do so; that he conferred with defendant, who was justice of the peace at Mt. Enterprise, about instituting a proceeding for seduction against Lee Langford, and conferred with the prosecuting officers of Rusk County about instituting proceedings, and had complaint prepared. In this connection it may be stated that one portion of appellant's defense consisted in showing that deceased may have been killed by some person on account of said seduction. An examination of the statement of facts discloses that this character of testimony was introduced with reference to what Presley did, about going from Weston to Mt. Enterprise to induce Langford to marry Ada Singleton, and that he refused to do so; and there was no controversy on this subject.

Appellant said he proposed to prove by John Ripley that he was the last person who left the store just before the shooting; that said witness will also state that defendant left the store sometime before he did, and that there was no person in the store, except deceased, Will Bussey and Alfred Bullard when he left. A few minutes after he left the store the gun fired. These facts were conceded by the

State, and we fail to see how his testimony would have been material.

It was also proposed to prove by Dr. Barnham, that at the time of the homicide he was sitting on the gallery of a house, about seventy-five yards west of the place where the killing occurred; and that immediately thereafter a single horseman passed rapidly in front of the house, going southeast from the place of the killing. We fail to see how this fact was material, either of itself or in connection with the testimony shown in the statement of facts. We do not believe the court erred in overruling the motion for continuance.

Appellant complains because the court did not charge on murder in the second degree. We do not believe that the facts show this to have been a case in which murder in the second degree was involved. Whoever shot deceased did so in the role of an assassin. He prepared himself beforehand, hunted deceased, and shot him from the darkness. Leslie v. State, 49 S. W. Rep., 73; Morgan v. State, 31 Texas Crim. Rep., 1; Beard v. State, 41 Texas Crim. Rep., 173; Whitfield v. State, 40 Texas Crim. Rep., 14; White v. State, 40 Texas Crim. Rep., 366.

Appellant also complains because the court failed to charge on circumstantial evidence. The fact that Bussey testified positively identifying appellant as the shooter and slayer of deceased, takes this case out of the realm of circumstantial evidence.

Appellant also insists the court erred in failing and refusing to charge the law applicable to accomplice's testimony and the corroboration thereof, contending that Bussey was an accomplice, because on the night of the homicide at the inquest he denied any knowledge of who did the shooting. Mere concealment of a crime does not make one an accomplice. This appears to be all that the witness Bussey did, and he explains why he did this. We do not believe the court erred in refusing to charge on accomplice testimony with reference to this witness.

The court did not err in refusing to give special requested instructions. In so far as applicable to this case they were given in the main charge of the court.

Appellant also urges as a ground for the reversal of this case the misconduct of the jury in discussing appellant's failure to testify. After the trial the juror Bellamy made an affidavit raising this question, and issue was joined by the State, and the court heard testimony pro and con on this subject. We gather from this testimony that something was said by some juror (not identified) in connection with the reading of the charge by the jury on this subject, in regard to the failure of defendant to testify. One of the jurors said, "Why didn't the old man get on the stand?" And in this connection, it was immediately replied, "We are not to consider that in this case." Or according to the language of one of the witnesses, it was replied, "that is not to be considered, the defendant has a right to swear or not to swear." Bellamy (on whose affidavit the question was raised) on examination stated that the matter was spoken of by some one;

did not remember who, several spoke of it; could not say just what was said about it. The remark was made the first or second evening after the charge was read by Jim Williams. He said that was not to be considered; and it was not discussed any more. As we understand, the consensus of the testimony showed, that in connection with the reading of the charge with reference to defendant's right to testify, the remark or inquiry was made, why didn't defendant testify? And there was an immediate reply to the effect that that matter was not to be discussed or considered by the jury. A number of cases are referred to by appellant to sustain his contention, to wit: Tate v. State, 38 Texas Crim. Rep., 261, 42 S. W. Rep., 595, 35 Texas Crim. Rep., 231; Wilson v. State, 39 Texas Crim. Rep., 365, 46 S. W. Rep., 251; Thorpe v. State, 50 S. W. Rep., 383, 40 Texas Crim. Rep., 346; Rogers v. State, 55 S. W. Rep., 817. In Tate's case, there was a discussion in the jury room about defendant's failure to testify to a greater extent than is here manifested, and the same was used as a circumstance against appellant. In Wilson case it was also shown that there was a discussion of appellant's failure to testify, and the circumstances show that his failure to testify was used as a circumstance against him; and so in Thorpe's case. The same may be said of the Rogers case. This case would appear to come within the rule laid down in Leslie v. State, 49 S. W. Rep., 73; and Mason v. State, 10 Texas Ct. Rep., 900. In those cases it was held that the mere mention in the jury room of the defendant's failure to testify, when this was immediately rebuked, and the statement made that the matter was not to be considered, would not afford cause for reversal. We understand this was what occurred as to this matter in the jury room.

During the trial, and while the district attorney was making his closing argument for the State, he said: "The defendant's counsel contend that the State's witness Bussey, could not have seen the defendant by the flash of the gun, as he has testified that he did. Now gentlemen of the jury, you all remember Judge Booty, who used to live here among you all; and was at one time judge of this court. While he was judge he tried a case in Harrison County in which the only witness for the State testified that he saw the defendant by the flash of the gun, and recognized him; that the defendant in that case had a red handkerchief tied around his neck, which the witness also saw by the flash of the gun. The defendant's counsel contended in that case just as they do in this case, that it was impossible for the witness to have seen it by the flash of the gun. The defendant in that case was convicted for murder in the first degree, and his punishment assessed at death, and on the scaffold, when he was hanged, he made a confession in which he admitted that he killed the deceased just as the witness had testified he did; and that he had around his neck at the time a red handkerchief, just as the witness had said." Defendant objected to the remarks of the district attorney, because they were outside the record, and nothing in the record justified

them, and were prejudicial to defendant and calculated to mislead the minds of the jury from the evidence in the case. Defendant verbally asked the court to instruct the jury, that they would not consider the same, and confine the district attorney in his remarks to the record in the case, which, according to the bill, the court failed to do. However, the court explains, "that the court verbally stated at the time to the jury that they must not be influenced by or consider other cases against the evidence in this case on trial." In support of his contention, appellant refers us to Fuller v. State, 17 S. W. Rep., 1108; Exon v. State, 33 Texas Crim. Rep., 461, 26 S. W. Rep., 1088; Baughman v. State, 14 Texas Ct. Rep., 254; Coleman v. State, 14 Texas Ct. Rep., 371.

In Fuller's case the district attorney stated that deceased was a poor man, and defendant had brutally murdered him (deceased) because he was a poor man, would not work and had married the defendant's daughter; that he violated no law in marrying the defendant's daughter, for he had a written order for the license. And again, he stated, that defendant's lawyers had called the dead man a devil; that this was an old dodge; that cases like this had occurred in Van Zandt County, and defendant's lawyers in this case had gotten their man clear by denouncing them as devils. If you acquit this defendant, gentlemen, Van Zandt County will run in blood. The foundations of the Republic will be sapped, and the government which our fathers fought, died and bled for will be wrecked." The court condemns this line of argument and refers to a number of authorities in support thereof. In said case it was further said: "That this is not a case which calls for mercy at the hands of the jury. Mercy has already been extended to the defendant by the verdict of the former jury. Had not the State's case been compromised by the verdict of the former jury, the State would have a case of murder in the first degree. You cannot convict of murder in the first degree as it is, but you are asked to duplicate the verdict of the former jury. There is nothing less than murder in the first degree here, and I know it." The court, after quoting the article of the Code which prohibits an allusion to the former verdict of conviction, say: "The argument of the district attorney in this particular constitutes reversible error, if there were no other error in the case." Evidently drawing a distinction between the former bills and the last one as to the reversible character of the remarks.

In Exon's case, 33 Texas Crim. Rep., 461, 26 S. W. Rep., 1088 (which was a rape case) the allegation being rape by appellant on his stepdaughter, defendant's wife testified on his behalf that she had never seen them in a compromising position. On cross-examination she was asked, if she had not sworn to the contrary before the grand jury. The question was excluded; but the prosecuting attorney stated in argument that the whole grand jury would swear to such fact. It was held in that case, that the failure to exclude such statement

or caution the jury that it only went to the credibility of the witness, was error.

In Baughman's case, supra, the prosecuting attorney pointed his finger at defendant, and said, "He knows whether or not he was indicted in the federal court at Tyler." The court say, that this remark should not have been made. Whether appellant was indicted in the federal court or not is immaterial in the case. It could not have been evidence on the trial, and if offered should have been excluded. That an attorney in his argument would not be permitted to make statements to the jury not admissible in evidence if the statements of the attorney were with reference to such facts. All of said cases were reversed on other grounds, and they can hardly be considered as holding that the reversal was predicated on the misconduct of the prosecuting attorney in argument alone.

In Coleman's case, the bill of exceptions shows that the remarks of the district attorney were with reference to the Spencer case; and the language used was, as follows: "Defendant's counsel claim the fact that the defendant told the officers about the occurrence, and surrendered, was proof of his innocence." The district attorney, in reply, stated, that he knew of a case of a negro named Spencer; and that counsel for defendant and some of the jury knew of said case— where defendant came across the river to Red River County, surrendered to the officers, and was subsequently convicted and sent to the penitentiary for ninety-nine years. The court in signing the bill explained that he instructed the jury not to consider the remarks of the district attorney. The court say: "These remarks were highly improper, and the objection to them should have been sustained at once. It is true that the court withdrew the remarks, or rather instructed the jury to disregard them, still the remarks were made and evidently found lodgment in the minds of the jury. If the facts stated by the district attorney in his argument had been introduced and offered before the jury, they would have been clearly inadmissible, and the admission of them before the jury would have required a reversal of the judgment." The court then proceeds to say: "Why matters of this sort should continually occur in the trial of cases we do not understand. Under the theories of our criminal jurisprudence, every case should be tried upon the basic principle of our law, which is the presumption of innocence and reasonable doubt; and all matters that infringe those rules should be carefully excluded from the jury, whether in evidence or argument. It hardly answers this sort of erroneous proceedings, that subsequently the court withdraws the matter from the consideration of the jury. It may or may not; it is owing to the seriousness of the statements. But these matters have become so frequent, and we find them in so many records that we feel called upon to discountenance them. Trial courts should promptly suppress such remarks and argument, and attorneys refrain from using them, to the end that only fair and legitimate testimony

and argument may be considered by the jury in the disposition of cases involving life and liberty." This case was also reversed on other matters, and we can hardly tell from the language here used whether this court would have reversed on said argument alone.

It may be stated that there are a number of cases in which improper arguments of counsel alone is such error as demands a reversal. Tillery v. State, 24 Texas Crim. App., 251; Hatch v. State, 8 Texas Crim. App., 416; Laubach v. State, 12 Texas Crim. App., 583; Moore v. State, 21 Texas Crim. App., 666; Crow v. State, 33 Texas Crim. Rep., 264. But these were all cases in which the allusion in the argument was to some matter involved in the case then on trial. As in Hatch's and Moore's case, the argument was about former trials, convictions and reversal of case then on trial. And in Laubach's case, the argument was to what absent witnesses had told the district attorney they would swear were they present. The Crow case referred to the finality of an acquittal and remedy by appeal in case of conviction in the particular case then on trial. The district attorney stated to the jury, that appellant would have some relief if he should be wrongfully convicted; that he could apply for a new trial and prosecute an appeal; but if the jury should wrongfully acquit defendant, the State had no remedy.

In Rutherford's case, 67 S. W. Rep., 100, which was a prosecution for murder, a person, whose name appeared endorsed on the back of the indictment, was called as a witness by the State, and sworn, but was not placed on the stand. Defendant testified that he was not expecting deceased to come to the place where the killing occurred, but came upon him unexpectedly, and there was no evidence of a conspiracy between defendant and the witness to induce deceased to go to the place of the killing. In that case, it was held error for the district attorney to state, in his closing argument, that if there was such conspiracy, it would have been proven by the witness; that he knew what he was talking about, and that the reason he did not put the witness on the stand was that, if she deceived him he could not contradict her. The court said in that case, that it was not competent for the district attorney to assert that such a conspiracy could have been proven by a witness who was not placed on the stand. In that case appellant orally requested the court to instruct the jury to disregard the argument and statement of the district attorney. The court refused to give the requested instruction on the subject. The case appears to have been reversed, among other things, on this ground. However, this was a direct allusion to the case then on trial, and to what the district attorney knew the witness would prove, and what he knew about the existence of a conspiracy, about which there was no testimony in the record, and which was a damaging fact against appellant.

In Bearden's case, 9 Texas Ct. Rep., 813, Puckett, one of the attorneys for the State, while addressing the jury, said: "Gentlemen

of the jury, Mr. Nelson said I was a scene lawyer. Yes, I am a scene lawyer. I was present and witnessed the killing, and I would have testified in this case if I were not an attorney in the case, and having witnessed the killing I know the State's theory is true." The court in this case attempted by a charge to withdraw the argument from the consideration of the jury; but our court said: "We are inclined to doubt whether this character of statement, coming from an attorney for the State who claimed to have witnessed the homicide, could be withdrawn from the jury so as to relieve it of prejudice to appellant." Here it is seen there was a direct allusion to the case, and the facts proven.

In Hatchell v. State, 11 Texas Ct. Rep., 705, it was held that remarks and argument by the district attorney, in effect that if the jury failed to convict, every good and respectable citizen of the county will hang his head with shame, were improper. Also that a comparison in argument between defendant on trial for murder and a hyena to the former's disadvantage; reference to the probability that defendant's counsel had stocked the jury with a man to hang it, held improper and reprehensible, but not ground for reversal in the absence of a requested charge refused with reference thereto.

Now, the question here presented is, under the authorities cited and the reason of the rule to be deduced therefrom, was the argument here of such a character as to have prejudiced appellant and his rights before the jury. The district attorney was simply relating what occurred with reference to a similar matter in another case, not in any wise connected with the case on trial. True, it served to illustrate the issue involved in the case on trial. However, the jury were admonished by the court immediately in that connection not to consider the argument of the district attorney with reference to said case, but to confine themselves to the evidence before them in the case on trial. No written charge was asked; that is, none was prepared by appellant's counsel and asked to be given by the court. We have a line of authorities which requires such a charge to be requested, and refused, and exception taken thereto, before the case will be reversed on account of improper argument. However, there is another class of cases which hold, where the argument is obviously improper, or of an inflammatory character, and calculated to prejudice the appellant, no written charge will be required before the case will be reversed. It will be seen from a recitation of the authorities that they are not altogether harmonious on this subject. Still we believe there may be traced as a correct legal principle, running through the cases, that wherever in the argument, the reference is to some fact in the case itself, that a certain statement could be proved by an absent witness, or that the attorney making the argument states of his own personal knowledge he knew the fact to be true, that it affords ground for reversing the case. And in some cases where under the peculiar circumstances the argument is of such an inflammatory character as to be obviously hurtful, that the

case will be reversed, although no written charge was asked and refused and exception taken thereto. If we were required to state a rule on the subject, it would be this: that where, from the nature of the case, the argument used, whether it be a fact stated pertaining to the case itself, or the injection of some illustration or inflammatory statement, obviously calculated to prove hurtful in the case to appellant, that this court will reverse, although no written charge was asked on the subject, and no exception taken to the refusal of the court to give the same. It occurs to us that the illustration or statement here interposed was of such a character. The critical point in the case was the identification of appellant as being the party who fired the shot which slew deceased. According to the testimony, that was established by one witness, who stated he recognized appellant as the person who fired that shot, from the flash of the gun. Outside of this testimony, the evidence inculpating appellant was purely of a circumstantial character. Now, in order to reinforce this point in the State's case, the State has recourse to an illustration, coming within the observation or experience of the district attorney, that occurred in that locality, and under a judge whose approval, from his high character, gave sanction to the illustration. The district attorney gave the details of that transaction and identification, which were very similar to those presented in this case. He told the jury how the details of that statement as to the identification of the defendant in that case must be true from the fact that he confessed on the scaffold that he was the guilty party. Under the peculiar facts of this case, we believe that the introduction of said illustration and the statement of the details thereof to the jury was of such a hurtful character to appellant's right, as to reverse this case. We accordingly hold that on account of said argument and statement of the district attorney, as set forth in said bill of exceptions, the judgment of conviction is reversed and the cause remanded. Smith v. State, 5 Texas Ct. Rep., 372; Powell v. State, 5 Texas Ct. Rep., 932.

*Reversed and remanded.*