## LOUIE COFFMAN V. THE STATE.

No. 1920.   Decided March 18, 1914.

Rehearing denied April 15, 1914.

**1.—Murder—Change of Venue—Discretion of Court.**

While the trial court is vested with a sound discretion to change the venue on his own motion, such discretion is not an arbitrary one; yet, this court can not substitute its discretion for that of the trial judge nor take it away from him.

**2.—Same—Change of Venue on Motion of the Trial Judge—Nearest Courthouse.**

Under article 626, Code Criminal Procedure, the court on his own motion can change the venue of a felony case and is not required that the change should be made to some adjoining county, the courthouse of which is nearest to the courthouse of the county from which the venue is changed, and where no abuse of discretion is shown, there was no error. Following Bohannon v. State, 14 Texas Crim. App., 271, and other cases.

**3.—Same—Case Stated—Adjoining County—Courthouse.**

Where defendant presented his motion to change the venue to a certain county which was overruled, and upon appeal of the case, this court held that the court erred and ordered the trial court to change the venue, which, on his own motion, he did to a county the courthouse of which was farther away than the one to which the defendant asked the change of venue but which had no railroad connection, while the one to which the venue was changed had such railroad connection, etc., and there being nothing to show that the defendant did not have a fair and impartial trial therein, there was no error.

**4.—Same — Circumstantial Evidence — Charge of Court — Words and Phrases.**

Where, upon trial of murder, the court gave a correct charge on all the issues raised by the evidence and also submitted a charge on circumstantial evidence following approved precedent, there was no error, because the word "alone" was not contained in the sentence, "In this case, the State relies for a conviction upon circumstantial evidence," or because it contained the word "crime" in the sentence, "In order to warrant a conviction of a crime upon circumstantial evidence, etc."

**5.—Same—Self-defense—Manslaughter—Charge of Court—Issue Must Be Pertinent.**

Where, upon trial of murder, the evidence did not raise either manslaughter or self-defense, there was no error in the court's failure to charge thereon, even if by any possible, strange, or unreasonable construction of the evidence, such issues could be claimed to be suggested, it not being of such force or effect as to either require or authorize the court to submit a charge on these issues. Such issues must be pertinently raised, and not merely squinted at. Following Treadway v. State, 65 Texas Crim. Rep., 208, and other cases.

**6.—Same—Defendant's Exculpatory Declarations—Charge of Court.**

Where, upon trial of murder, the court instructed the jury that if they believed from the evidence that defendant's declarations introduced by the State were made by him that the same must be taken together and the State must be bound thereby, except in so far as they might believe from the evidence the same had been shown to be untrue and that they must be taken and considered by the jury with other facts and circumstances in the case, which was a proper application of the law to the evidence, there was no error, and defendant's objection that the jury were thereby permitted to be misled was untenable.

### 7.—Same—Charge of Court—Murder in Second Degree.

Where, upon trial of murder and a conviction of murder in the first degree, the evidence did not raise the issue of murder in the second degree, but the court, nevertheless, charged thereon, the defendant could not complain, especially where the court submitted the theory of the defendant that the deceased committed suicide.

### 8.—Same—Charge of Court—Presumption—Deadly Weapon.

Upon trial of murder where the issue of presumption from the use of certain weapons under article 776, Old Penal Code, was not raised by the evidence, there was no error in the court's failure to charge thereon.

### 9.—Same—Charge of Court—Contradicting Witnesses.

Where, upon trial of murder, the testimony of several State's witnesses was attacked by defendant by showing that their testimony was different from that on another trial, and the court properly instructed the jury without specifying the names of said witnesses that they could pass on the credibility of said witnesses, there was no error in omitting the names of said witnesses.

### 10.—Same—Charge of Court—Murder in the First Degree.

Where, upon trial of murder, the court's charge on murder in the first degree was correct, there was no reversible error.

### 11.—Same—Evidence—Allusion to Former Conviction.

Where, upon trial of murder, the record on apppeal showed that there had been previous trials of the case to which allusion had been made in various ways, and the conviction was amply supported by the evidence under a proper charge of the court, the mere reference of a State's witness to a former conviction of defendant was not reversible error, especially where the defendant refused the proposition to continue the case. Following Smith v. State, 52 Texas Crim. Rep., 344, and other cases.

### 12.—Same—Misconduct of Jury—Allusion to Defendant's Failure to Testify.

Where, upon appeal from a conviction of murder, the motion for new trial on the ground of misconduct of the jury in alluding to defendant's failure to testify, the record showed that the trial court heard evidence thereon and overruled the motion, there was no reversible error. Following Long v. State, 48 Texas Crim. Rep., 175, and other cases.

### 13.—Same—Requested Charge of Court—Practice on Appeal.

Where no reason appears in the record or by bill of exceptions why any or either of defendant's requested charges were refused, the same could not be reviewed on appeal. Following Ryan v. State, 64 Texas Crim. Rep., 628, and other cases.

### 14.—Same—Argument of Counsel.

Where none of appellant's bills of exception complaining of the argument of State's counsel show any reversible error, it is unnecessary to discuss them. Following Pierson v. State, 18 Texas Crim. App., 524, and other cases.

### 15.—Same—Evidence—Ill-feeling—Defendant's Acts and Declarations.

Upon trial of murder, there was no error in introducing testimony to show a state of ill-feeling, mistreatment and threats by defendant towards the deceased. Following Dill v. State, 1 Texas Crim. App., 278, and other cases.

### 16.—Same—Evidence—Practice on Appeal.

Where the rejected testimony was not a matter of any importance, there was no reversible error.

**17.—Same—Evidence—Clothes of Deceased.**

Upon trial of murder, there was no error to permit the State to show what had become of the mattress and the bed clothes whereon deceased lay when she was killed and that they had been either burned or washed, the court properly limiting said testimony.

**18.—Same—Evidence—Experiments.**

Upon trial of murder, there was no error in permitting testimony as to the distance a person would have to be from deceased to have shot her where she was shot, and the experiments the witnesses had made showing the effect of such shots.

**19.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction of murder in the first degree, the evidence sustained the conviction under a proper charge of the court, there was no error.

Appeal from the District Court of Grayson. Tried below before the Hon. B. L. Jones.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*G. R. Smith* and *R. C. Meritt,* and *F. E. Wilcox* and *Rice Maxey,* for appellant.—On question of court's charge on circumstantial evidence: Trinkle v. State, 52 Texas Crim. Rep., 42; Pettus v. State, 58 Texas Crim. Rep., 546, 126 S. W. Rep., 868.

On question of court's failure to charge on manslaughter: Neyland v. State, 13 Texas Crim. App., 536; Green v. State, 58 Texas Crim. Rep., 428, 126 S. W. Rep., 860; Lewis v. State, 48 Texas Crim. Rep., 614; Arnwine v. State, 49 id., 5.

On question of exculpatory statements: Pratt v. State, 50 Texas Crim. Rep., 227; Combs v. State, 52 id., 613; Roberts v. State, 64 Texas Crim. Rep., 135, 141 S. W., Rep., 235.

On question of the court's charge on murder in the second degree: Powdrill v. State, 62 Texas Crim. Rep., 442, 138 S. W. Rep., 114; Kannmacher v. State, 51 Texas Crim. Rep., 118; Redman v. State, 52 Texas Crim. Rep., 591, 108 S. W. Rep., 365.

On question of allusion to former conviction: Baines v. State, 43 Texas Crim. Rep., 490; Smith v. State, 52 id., 344; Arnwine v. State, 54 id., 213; Morrison v. State, 39 id., 519; Salazar v. State, 55 id., 317.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—On this trial appellant was again convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life. This is the second appeal. The decision on the first is reported in 62 Texas Crim. Rep., 88. His punishment on the first was assessed at death. The trial this time occurred in December, 1911. The record reached and was filed in

this court May 14, 1912. It is to be deplored that the case has been held
here so long without a decision thereof.

From the other decision the general character of the case can be under-
stood. It is unnecessary here to give any extended statement of the
evidence. Wherever it may be necessary in deciding any question raised
herein such statement will be made as is necessary.

In the opinion on the former appeal we held in effect that the lower
court erred in not granting a change of venue, and ordered the trial
court to change the venue. We did not intend thereby to direct or re-
quire that the venue should be changed to any particular county, nor to
take away the discretion of the lower court on that question. The law
expressly confides a discretion in such matters in the trial judge, when
he changes the venue on his own motion. (C. C. P., art. 626.) This
court has no right or authority to take that discretion from a trial judge.
While, as held uniformly, it is a sound judicial discretion, not an arbi-
trary personal one, yet, this court can not substitute its discretion for
that of the trial judge, nor take it away from the trial judge. When
our Codes were first adopted, the court, of his own motion, was not au-
thorized to change the venue. This power was first given by the Act
of 1876, now article 626, Code Crim. Proc. Before said authority and
discretion was given to the trial judge, our statute (art. 631, C. C. P.)
in effect required that the change should be made to some adjoining
county, the courthouse of which was nearest to the courthouse of the
county ordering such change. At the time said original law was enacted
we judicially know that there were no railroads in the country affording
access from one county seat to another, but universally, or practically so,
the common dirt public roads were used and had to be used. No such
conditions now exist and especially in the territory where this crime is
alleged to have been committed and the case tried. The object of the
old law requiring the change to the nearest county seat was because of
convenience to the parties and the witnesses and to save expense in the
trial. The gist of an accused's right to a change is that he shall not be
tried in a county where from prejudice or combination against him he
can not get a fair and impartial trial, but that he shall be tried in some
county where he can get such fair and impartial trial, and not merely
that the change shall be made to the county seat of the nearest county.

This record shows, and the trial judge found and held, that the court-
house of Rockwall County was twenty-nine or thirty miles distant on a
direct line from the courthouse at McKinney in Collin County; that
there was no direct railroad connection between the two courthouses of
said counties; that to reach the courthouse of Rockwall from McKinney
by means of railway, the distance was at least fifty-five miles and per-
haps farther; that while the courthouse at Sherman in Grayson County,
by a direct line, is about three miles farther than the courthouse in Rock-
wall, it can be reached by railway and interurban conveyance at a dis-
tance of some twenty-two to twenty-five miles nearer. The evidence on
the trial of this question before the trial judge further showed, in effect,

that where the place of the alleged homicide occurred was in the northern part of Collin County. We know judicially that practically the whole of the south line of Grayson is the north line of Collin and that Rockwall is on the extreme southeast corner of Collin. Appellant lived, and most if not all of the witnesses must, therefore, have lived, much nearer the courthouse of Grayson than that of Rockwall. The evidence further shows that there was no reason why the change should not be made to Grayson for there was no prejudice against appellant or his case in Grayson that would in the least deprive him of a fair and impartial trial therein. There is not an intimation in this record, so far as any prejudice against him or his case was concerned, that he did not have a fair and impartial trial in Grayson County. In this connection we will quote what was said by this court in Bohannon v. State, 14 Texas Crim. App., 302, as follows:

"We are of the opinion, and so hold, in accordance with the former decisions of this court, that under article 576 (626) of the Code of Criminal Procedure, which we have quoted, the judge had the authority, of his own motion, to send this case for trial to Austin County. He was clothed with this discretion by the express and unqualified words of the law, and this law was enacted under the express sanction of the Constitution. (Const., art. 3, sec. 45.) It is true that this discretion is a judicial, and not a personal one (Walker v. State, 42 Texas, 360; Dupree v. State, 2 Texas Crim. App., 613); yet, *it being a discretion created and confided by the law, it will not be revised by this court in the absence of any showing that it has been abused to the prejudice of the defendant.* Such has been the uniform practice of this court, established by numerous decisions, and from which we see no reason to depart. (Noland v. State, 3 Texas Crim. App., 598; Johnson v. State, 4 Texas Crim. App., 268; Labbaite v. State, 6 Texas Crim. App., 257; Daugherty v. State, 7 Texas Crim. App., 480; Cox v. State, 8 Texas Crim. App., 254; Myers v. State, 8 Texas Crim. App., 321; Grissom v. State, 8 Texas Crim. App., 386; Webb v. State, 9 Texas Crim. App., 490.)

"It has been ably argued by counsel that it is dangerous to the liberties and rights of the citizen to confide to its district judges such unrestricted power as is conferred by the broad and unqualified language of article 576, above quoted, and that it should be limited by the provisions of article 581, following it. We do not regard article 581 as being restrictive of the powers conferred by article 576, and whether or not the power complained of is a dangerous one to be vested in district judges is not a question for this tribunal to determine. We will say, however, that, since the enactment of article 576 (626) no case has come under the observation of this court in which the discretion conferred had been, in our opinion, abused. And in the case we are now considering we fail to discover any abuse of this discretion, *and there is no pretense, or at least no effort is made to make it appear, that the defendant has in any respect been injured in his rights, or prejudiced by the action of the court, in sending the case to Austin County,* instead of Wharton County,

for trial." Again, Judge White, in section 675 of his Annotated Procedure, under art. 618, C. C. P., requiring the change to be made to the nearest county seat of the adjoining county, correctly says:

*"It is only where the change of venue is granted upon application either of the State or the defendant, that the venue is required to be changed to the nearest county. The rule does not apply where the change is made by the judge of his own motion; because he is expressly authorized, by article* 613 (626) *to send it to any county in the same or an adjoining district.* Frizzell v. State, 30 Texas Crim. App., 42. . . . And where the defendant made application for change on account of prejudice and influential combinations against him, and the court granted the application, but over defendant's objection, instead of sending it to the nearest courthouse sent it to another county, assigning as his reason that a fair and impartial trial could not be had in the adjoining county with the nearest courthouse. Held, that *the judge had authority to make such change of venue, the action being tantamount to a change as of his own motion.* Bohannon v. State, 14 Texas Crim. App., 271; Woodson v. State, 24 Texas Crim. App., 153; Brown v. State, 6 Texas Crim. App., 286; Preston v. State, 4 Texas Crim. App., 186; Rothchild v. State, 7 Texas Crim. App., 519; Cox v. State, 8 Texas Crim. App., 254; Mondragon v. State, 33 Texas, 481." (Italics above ours.)

When appellant presented his motion to change the venue, under the previous decision of this court, claiming it should be made to Rockwall the court overruled the motion. Then, on his own motion, he changed the venue to Grayson County. The case thereupon was sent to Grayson. When there called for trial, at which this trial occurred, appellant made a motion to have the case transferred back to Collin, or, in effect, transferred to Rockwall, claiming that the court in Grayson had no jurisdiction. The court overruled this. None of these matters present any error. The venue was properly changed to and the case tried in Grayson.

Judge White, in his Annotated Procedure, section 813, subd. 5, p. 532, correctly states: "There is no prescribed formula for a charge on circumstantial evidence. Loggins v. State, 8 Texas Crim. App., 434; Hubby v. State, 8 Texas Crim. App., 597. If the ideas conveyed are correct, and so expressed as to be understood by the jury, the charge is sufficient. Chitister v. State, 33 Texas Crim. Rep., 635; Ray v. State, 13 Texas Crim. App., 51; Taylor v. State, 9 Texas Crim. App., 100; Rye v. State, 8 Texas Crim. App., 153; Simms v. State, 8 Texas Crim. App., 230. The charge in general use in this State seems, in the main, to have been taken from the celebrated Webster case, which is as follows: 'In order to warrant a conviction of a crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt; all the facts' (that is, the facts necessary to the conclusion) 'must be consistent with each other and with the main fact sought to be proved; and the circumstances, taken together, must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing in effect a

reasonable and moral certainty that the accused, and no other person, committed the offense charged.' 'It is not sufficient that the circumstances coincide with, account for, and therefore render probable, the guilt of the defendant. They must exclude to a moral certainty every other reasonable hypothesis except the defendant's guilt, and unless they do so, beyond a reasonable doubt, you will find the defendant not guilty.' We have added the last two sentences to the charge in the Webster case in view of the later decisions of our court. The rule in Webster's case was approved in the cases of Henderson v. State, 14 Texas, 503; Hubby v. State, 8 Texas Crim. App., 597; Campbell v. State, 10 Texas Crim. App., 560. A charge on circumstantial evidence, to be sufficient, must, in effect, instruct the jury that to warrant a conviction on such evidence the facts proved must be of a conclusive nature and lead, on the whole, to a satisfactory conclusion, and produce, in effect, a reasonable and moral certainty that the accused, and no other person, committed the crime charged, and exclude every other reasonable hypothesis consistent with defendant's innocence; and that unless they do so find, beyond a reasonable doubt, the defendant should be acquitted. Smith v. State, 35 Texas Crim. Rep., 618; Crow v. State, 37 Texas Crim. Rep., 295; Boggs v. State, 38 Texas Crim. Rep., 82."

These are some of the rules well established in this State, pertaining to charges: "In determining the sufficiency of a charge, it must be construed as a whole and not by isolated extracts, excerpts, or paragraphs. It must be treated as an entirety, and regard must be had to the connection and interdependence of its several parts. A charge in a murder case should not and can not properly all be given in one paragraph as a whole. It should necessarily be given in separate and distinct paragraphs.

"The charge and the language thereof must have a reasonable and not a strained and unreasonable construction, and the jury must be considered to be reasonably intelligent and capable men, sufficiently so to put such reasonable construction on the charge, and not a strained and unreasonable construction thereon." (Christian v. State, 71 Texas Crim. Rep., 566, 161 S. W. Rep., 101.)

The court correctly and fully charged on murder in the first and second degrees in this case. In submitting the case to the jury for a finding on murder in the first degree he required the jury to affirmatively believe beyond a reasonable doubt every essential fact necessary to be found against appellant to show murder in the first degree before they were authorized to convict him thereof, after fully and completely, in the charge, telling them what was, and every essential element of, murder in the first degree. In addition, he charged the reasonable doubt between the degrees of murder, and told them that if they were satisfied beyond a reasonable doubt that appellant was guilty of murder but had a reasonable doubt of which degree it was, to give him the benefit of the doubt and not find him guilty of a higher grade than murder in the second degree. And, in addition still, charged them that appellant was

presumed to be innocent until his guilt was established by legal evidence to their satisfaction beyond a reasonable doubt and in case they had a reasonable doubt as to his guilt to acquit him and by their verdict say not guilty.

The court in charging on circumstantial evidence gave literally and fully the charge thereon as in Webster v. Com. (5 Cush., 386), as shown by Judge White above. This charge, or charges substantially following it, have been so universally and in so many cases approved and held correct by this court that it is unnecessary to collate and cite them. We think no well considered case can. be found which holds, or tends to hold, to the contrary. Appellant attacks this charge on several grounds,—one, that the word "alone" is not contained therein following these words in the beginning of this charge, "in this case the State relies for a conviction upon circumstantial evidence." Also because it contains the word "crime" in this part of it: "In order to warrant a conviction of a crime on circumstantial evidence." It did not omit to tell the jury in substance and in fact as claimed by appellant, "that all the facts necessary to the conclusion sought to be established, must be consistent with each other and with the defendant's guilt." It did not conclude with these words, "Save the guilt of the accused," as contended by appellant it should. We regard all of these objections as hypercritical. Appellant, in his contention, on these points attempts to put an unreasonable and strained construction on the court's charge. Instead of as the rule announces above, the language of the charge must have a reasonable construction and the jury must be considered to be reasonably intelligent and capable men, sufficiently so, to put such reasonable construction on the charge and not a strained or unreasonable construction thereon. In our opinion, the jury were not misled by the omission of any of the words criticised by appellant as having been left out, nor by the use of the word "crime" in the charge. This latter word is universally used in the charge on circumstantial evidence and was correctly used and no such forced or unreasonable construction could have been put thereon by the jury as claimed by appellant. None of appellant's criticisms of the court's charge in this respect present any error.          ·

We have carefully read and studied the statement of facts and the whole of it in this case. In our opinion it raises neither manslaughter, nor self-defense and the court should not, as it did not, submit either of these issues to the jury. In our opinion the evidence not only does not raise either of these issues, but excludes each of them. If by any possible strained or unreasonable construction of the evidence, or application of it, such an issue could be claimed to be even suggested, it was not of such force or effect as to either require or authorize the court to charge thereon. It is undoubtedly the law that when the evidence, from whichever side or from whatever source, pertinently raises any question of defense, or of a lower grade of offense alleged, it is the duty of the court to submit it. No one questions this rule. There have been some decisions in this State which held that even when such question is squinted at, or there

is a scintilla of evidence raising it, that the court must submit it. But such a doctrine and such decisions have been so forcibly demonstrated to be wrong, that we deem it unnecessary to discuss the question, or collate the cases. We will merely quote such eminent judges as Chief Justice Roberts of the Supreme Court of the State and Judge Hurt, formerly Presiding Judge of this court, as we did in Treadway v. State, 65 Texas Crim. Rep., 208, 144 S. W. Rep., 655, as follows:

"Such a theory has long since been exploded by many of the opinions of this court, notably by the opinion of Judge Hurt in Davis v. State, 28 Texas Crim. App., 542, 13 S. W. Rep., 994, wherein he quoted and approved the opinion of Chief Justice Roberts in Bishop v. State, 43 Texas, 390, to the same effect. He said: 'Of what degree of force must the evidence be that tends to establish an offense, or tends to mitigate the offense charged in order to require a charge applicable thereto? Chief Justice Roberts says that, if its force is deemed to be very weak, trivial, or light, and its application remote, "the court is not required to give a ·charge upon it." "If, on the other hand, it is so pertinent and favorable as that it might be reasonably supposed that the jury could be influenced by it in arriving at their verdict, the court should charge so as to furnish them with the appropriate rule of law upon the subject." Bishop v. State, 43 Texas, 390. Hence, unless the evidence tending to present a less degree of an offense or any theory of defense be so pertinent and forcible that it might be reasonably supposed that the jury could be influenced by it in arriving at their verdict, a failure of the court to charge thereon would not be ground for reversal in the absence of exceptions. This position is in exact harmony with the first opinion in this cause, and in accord with Bishop's case, supra, and a number of cases decided by this court, notably Cunningham's case, 17 Texas Crim. App., 89, Elam's case, 16 Texas Crim. App., 34, and Leeper's case (27 Texas Crim. App., 694, 11 S. W. Rep., 644), decided at the present term. See, also, Johnson's case, 27 Texas, 758. Loose expressions upon this subject can be found in the opinions of this court, but the principle is well settled and is absolutely correct, whether this court has always adhered to it or not, that in the absence of exceptions to the charge of the court, for this court to reverse, the evidence tending to present a phase of the case or theory favorable to the accused must be so pertinent and favorable that it might reasonably —not possibly—be supposed that the jury could be influenced by it in arriving at their verdict. Unless the evidence be of such a character no injury appears, no injury is probable—not possible, but probable—and, unless this appears, there is no ground for reversal; and to reverse in the absence of probable injury would be contrary to principle.' This holding was before the Code of Criminal Procedure (art. 723, old) was amended in 1897 (Acts 25th Leg., c. 21). Then this article required a reversal. Now and since 1897 the statute is the reverse of what it had been. It now says 'the judgment shall not be reversed unless the error . . . was calculated to injure the rights of the defendant.' This

statute has all the time been held to be remedial by this court. Again, in the opinion of this court by Special Judge Cobb, in Wilson v. State, 60 Texas Crim. Rep., 1, 129 S. W. Rep., 613, he said: 'It is not incumbent on the trial court, nor proper, to instruct upon manslaughter where there is a mere suggestion or hint of facts that might show manslaughter —such a mere semblance of proof or so slight proof as no sensible juror would hang a question upon. What must be shown or put in the balance of reasonable doubt before the issue of manslaughter is required to be placed before the jury? We regard the statute as plainly requiring that there must be some proof tending to show that the homicide was committed under the immediate influence of sudden passion; that there was such cause of or provocation producing the passion as would produce in persons of ordinary temper a degree of anger, etc., sufficient to render them incapable of cool reflection; and that such condition of mind was in the slayer when he committed the deed. Maxwell v. State, 31 Texas Crim. Rep., 119, 19 S. W. Rep., 914; Cannon v. State, 41 Texas Crim. Rep., 467, 56 S. W. Rep., 351; Alexander v. State, 63 Texas Crim. Rep., 102, 138 S. W. Rep., 721."

We can not sustain any of appellant's attacks on paragraph 21 of the court's charge, which was as follows: "The State has introduced in evidence certain declarations purporting to be made by the defendant just after the death of the deceased, and with reference to this evidence you are instructed that if you believe from the evidence that said declarations were made by the defendant, then such declarations must be taken together and the State is bound by them, except in so far as you may believe from the evidence the same have been shown to be untrue. Such declarations are to be taken into consideration by the jury as evidence in connection with the other facts and circumstances in the case."

The evidence establishes that the deceased was killed just after 10 o'clock or sometime before 11 o'clock at night. Just after the shooting of deceased appellant began holloing, going to his nearest neighbor's Mack Tittsworth, who lived only 175 yards from him. Tittsworth had not gone to bed but was sitting up and heard the shots. As soon as appellant reached Tittsworth's he called for him and at once said to him, "Run here, Mr. Tittsworth, Jessie, my darling wife, has shot me and killed herself." Tittsworth at once went with appellant to appellant's house where his dead wife was. In going, he further told Tittsworth, in substance, that he was lying in the bed with his wife asleep; that he slept with his hands over his ears, each hand over one ear, and that while asleep his wife shot him in the hand and he felt the wound, sprang out of bed and she shot herself. Upon reaching the house Tittsworth found appellant's wife lying at length in the bed with the cover up over her feet and to about or above her waist and had been shot in the face and head with a shotgun, a most horrible and immediately fatal wound. Appellant, at the time, exhibited his left hand showing that a shot had passed through it near the front, or forefinger. Very soon after Tittsworth reached appellant's house, other neighbors, having been notified or alarmed

also began to arrive. Among them was Mrs. Ownbey. As she went into the room where deceased was, appellant met her and said, "Oh Mrs. Ownbey, it's awful, it's awful. This is what she did and then shot herself." When he said "this is what she did" he showed or held up his hand to her. His hand was then well wrapped up but seemed to be hurt. He then said to Mrs. Ownbey that his wife had retired in a bed in the other room that night and that he had retired in the bed where she saw her dead body; that shortly after first retiring she came into his room and asked him to read to her, which he did, and she got in that bed with him while he read to her; that he dozed off to sleep and was awakened by a noise and hurting in his hand and he made a light and as he made the light he heard the noise of the gun and found her wounded and ran for help. He also showed Mrs. Ownbey, as he did Mr. Tittsworth, how he slept with his hands up about his head. The testimony of these two witnesses shows what his claim is of how the killing of his wife occurred. After this statement by him to Mrs. Ownbey a considerable number of other neighbors came in. Where the killing occurred was five miles from Melissa in Collin County. The doctors and appellant's father and mother lived at Melissa. Sometime after the killing his father, mother, and the doctors were 'phoned for; they were out, reaching appellant's just about 12 o'clock that night, more than an hour and perhaps an hour and a half or longer after the killing. Dr. Rutledge was one of the physicians sent for who went to appellant's. He testified that an hour or longer after he reached there he dressed appellant's hand; that was what he was sent for and that was why he went there and that appellant's hand didn't need dressing is the reason he didn't sooner dress it. Some considerable length of time after Dr. Rutledge arrived on the scene, Tittsworth testified, he was out in the hall when Rutledge and appellant were out there and he heard appellant say to Rutledge, "Doctor, make your statement as light as possible; it's a pretty hard case." Mrs. Ownbey testified that this occurred some two, three or four hours after Dr. Rutledge got there and that she heard this much of appellant's statement to Dr. Rutledge at the time, "Doctor, make your statement as light as possible." Taking all the testimony on the subject, the doctor's as well as the others, it is certain that this statement if made by appellant to Dr. Rutledge occurred several hours after killing and could in no way have been understood by the jury to be "just after the death of deceased." The other statements made by appellant to Tittsworth and Mrs. Ownbey, clearly were made "just after the death of deceased." So that appellant's objection to said paragraph of the court's charge, in effect, that the jury were thereby permitted to take the last statement to Dr. Rutledge in connection with said first statements by appellant to Mrs. Ownbey and Tittsworth, is not well taken. In some cases it might be proper for the court to tell the jury in a charge of this kind, when called for, that the State has proved that appellant made certain statements, such as those first made to said two witnesses, but certainly it would not be error in the court to leave

the question to the jury of whether or not the State had proved that the appellant made such statements. So that, when the court told the jury in this charge that the State had introduced "certain declarations purporting to be made by the defendant," it could not injure the appellant and did not mislead the jury. The first statements to said two witnesses by appellant certainly were res gestae. The one to the doctor in no event could be and appellant concedes both of these propositions and none of appellant's criticisms of this charge are well founded.

Appellant has some complaints to different paragraphs and to some words therein used by the court in charging on murder in the second degree. We have considered them all. None of them are well taken even if murder in the second degree should have been charged upon. However, in our opinion the evidence in no way raises murder in the second degree, and the court should not have charged thereon or submitted the same. This, however, was to appellant's advantage and in his favor and not against him. (Christian v. State, supra.) The evidence in this case absolutely demonstrates that it was murder in the first degree,—premeditated, deliberately planned, and a cold blooded assassination by appellant of his wife, while she was lying asleep in the bed, or, at least, while she was lying prostrate and at full length in the bed; or, as claimed by appellant, it was a suicide by her. We do not propose to detail the evidence, nor to discuss it on this feature, but we do say that all the physical facts, and the circumstances not only demonstrate that the State's theory of this killing is correct, but it likewise demonstrates that that of the appellant was physically impossible. She did not commit suicide. The court, however, in his favor further told the jury in the eighteenth paragraph of the charge as follows: "On the other hand even though you may believe from the evidence beyond a reasonable doubt that deceased met her death by reason of a gun-shot wound, yet, if you further believe from the evidence, that, with her own hands or in any other way by her own act or by accident or by design on her part or by someone else other than the defendant, the gun was caused to be fired which resulted in her death, or if you have a reasonable doubt as to any of this, you will acquit the defendant and say by your verdict not guilty."

The evidence did not call for and the court should not have charged article 1106 of the Penal Code.

Several of the State's witnesses were attacked by appellant by showing that their testimony on this trial was different from what they had testified on another trial and in a habeas corpus proceeding in this matter, and by showing that they made contradictory statements in some particulars outside of, or in addition to their said previously sworn testimony. The court properly told the jury in a general way, without specifically naming these witnesses,—there were about seven of them—that they could consider said contradictions for the purpose of passing on the credibility of said witnesses and the weight and credit they would give their testimony on this trial, and that they could not consider it for any

other purpose. This covered the ground and the court did not commit error therein by not giving the names of these several witnesses.

Appellant has some other complaints to some words and short sentences of the court's charge on murder in the first degree. While we have considered them, it is unnecessary to state or discuss them. They show no reversible error.

The whole record in this case, in various ways shows that appellant had a hearing on habeas corpus when he was first arrested and that many witnesses testified at that time. It also shows that there had been a previous trial of this case in Collin County before the venue was changed to Grayson. A large number, if not all of the witnesses, were asked, while testifying, whether or not they had testified on this previous trial or habeas corpus hearing. There can be no particle of doubt but that this jury, from all this, had absolute knowledge, properly received during this trial, of this previous habeas corpus hearing and of the former trial of this case in Collin County.

Miss Lizzie Barnes testified as a State's witness and gave more or less important testimony, showing, in effect, a hostile feeling by appellant toward deceased for some length of time, and even while testifying for the State had volunteered some testimony without being asked therefor. The court at the time admonished her and told her to answer only questions asked her. It seems the court retired the jury in order to so properly admonish this witness. Of course, it was perfectly apparent to all parties that she was very hostile towards appellant and doubtless felt outraged at the killing of her sister and was somewhat obstreperous. After this occurred and the jury was returned, Judge Maxey, one of appellant's attorneys proceeded to cross-examine her. The bill then shows the following:

"Judge Maxey: You testified on the other trial of this case, didn't you? A. I testified the time he got the death sentence. That's the only time I testified. Judge Maxey: Will the court instruct this witness or let her continue that? The Court: You must not make such a statement as that. The witness: Well, that is the only time I testified. The Court: You must just answer the questions. The jury will not consider that they ever heard that remark from the witness. Judge Maxey: You said that intentionally, purposely, because you didn't think it was proper to do it, didn't you? Mr. Freeman: We object to that. The Court: I sustain the objection. I have ruled that out. Had the witness been permitted to answer this question she would have answered it in the affirmative. Judge Maxey: I ask the court to instruct the witness. When matters are injected purposely by the witness before the jury we don't think it is right and think the court ought to control it. The Court: I am controlling it. Just answer those questions alone and don't answer anything outside. Mr. Smith: We desire to except to that answer; voluntary statement of witness. Judge Maxey: We want the bill to show that the court has specifically instructed the witness beforehand only to answer questions and not volunteer any statements and

in the face of that she makes the statement. Q. You testified on the former trial of this case in McKinney, didn't you? A. Yes, sir."

The balance of the bill is very lengthy. It is unnecessary to quote it. We will state its substance. The occurrence above noted occurred some hour or two before adjourning time Saturday evening. The court and the State's attorneys, at least, if appellant and his attorneys were not, were very much perturbed about the matter. The court adjourned until the following Monday morning to consider and investigate what effect it would have on the trial. The court, upon convening the following Monday morning, in the absence of the jury, but in open court and in the presence and hearing of the appellant and the attorneys for both sides, proceeded to discuss the matter. He attempted to get an expression out of the appellant's attorneys and out of the appellant as to what action they desired taken under the circumstances. The attorneys for the State expressed a willingness, perhaps a desire, that the appellant withdraw his announcement of ready and, because of what had occurred, continue the case and in effect agreed that if appellant did do so they would consent to such action being taken by the court. The State's attorneys sought an expression from the court as to what action he would take in case the appellant acted on their suggestion to continue the case. The court declined to express himself further than that he would investigate the question further and, in effect, that if he came to the conclusion it was such an injury as would result disastrously to a conviction, if one was had, he would grant the continuance. However, we infer this from the whole proceeding. Appellant and his attorneys not only declined, in effect, the State's said proposition, but stated they would not express themselves in any way other than as objecting to the whole matter. We think we are justified clearly in concluding that appellant thought he had a reversible error. He was, therefore, willing that the trial should proceed; in fact, did not want to continue it because he might get a verdict of not guilty. He took the chance and lost; he must stand by his choice. The matter does not present reversible error. The court did everything reasonable and proper it could in the premises. No reflection is intended upon appellant or his attorneys in the choice they made. It doubtless would have been ours if placed under the same circumstances.

It is true our statute (art. 843, C. C. P.) says: "The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument." No proper construction of this statute would be that merely because some obstreperous witness, on cross-examination by an accused, should purposely and intentionally or otherwise, incidentally mention the fact of a former conviction and the penalty inflicted, cause a reversal of the case, especially so when both the court and the State immediately did everything that was reasonably proper to do to prevent injury thereby. And further, especially when appellant was given at once the opportunity to

continue the case and thereby avoid any injury to him and he declined. Certainly he is in no position to have this court reverse on any such ground. Everyone is presumed to know the law. Certainly intelligent jurors, as every other intelligent person in this State, know that the State, by our Constitution and statute law both, has no right to a new trial in any contingency in a criminal case, but an accused exclusively has such right. It is, therefore, not at all unreasonable, but on the contrary under the circumstances of this case when it was time and again as shown by this record made manifest by both the State and the accused that this case had been formerly tried, that each juror trying this case must have known that appellant had been convicted in the previous trial, whether they knew the penalty or not. The penalty in the first trial was assessed at death. The jury in this case did not assess the penalty at death but life imprisonment only, conceded by everyone to be a less severe penalty.

In several cases this court has had occasion to pass upon the proper construction of the above statute. The true construction thereof was given in Smith v. State, 52 Texas Crim. Rep., 344, as follows:

"We think the true rule is that where, as in this case, the testimony supports the verdict, and the charge of the court properly submits the case to the jury, that a verdict ought not to be set aside for every incidental and casual mention of a former trial or a former conviction, and that in no case should it be set aside in a case tried according to law where the conviction is supported by the testimony, unless the court may fairly and reasonably see in the light of all the circumstances that such reference and discussion did or might have prejudiced the appellant's case. It is possible that there is some language in some of the decisions not wholly in accord with the views here expressed, but on full consideration this is believed to be the correct rule, and tested by this rule we believe appellant is without just ground of complaint."

Again in Baines v. State, 43 Texas Crim. Rep., 490, of this statute this court said: "While strictly construed, the statute would appear to prohibit the barest allusion to a former conviction, yet we do not take it that this would constitute reversible error. Campbell v. State, 35 Texas Crim. Rep., 160; Brantly v. State, 42 Texas Crim. Rep., 293. Evidently the intent and purpose of the statute was to guard appellant against the use by the State of his former conviction as an evidence of his guilt, and it may be that any intentional allusion to a former conviction ought to afford ground for reversal; but where it is evident there was no intention to allude to a former conviction, and the matter was referred to accidentally and for no ulterior purpose, in such case it ought not to afford ground for reversal."

Again, in Arnwine v. State, 54 Texas Crim. Rep., 213, it appeared that some of the jurors trying that case had also tried and convicted another in a companion case and, in effect, they all knew of the former conviction and the penalty assessed. This court in the Arnwine case, p. 221, said: "It seems that this jury which tried appellant in this case,

also rendered a verdict in the other case.  If this was done, doubtless it was done by agreement of appellant.  This being true, then the jury knew all about the verdict in the former case.  Furthermore, if the jurors on their voir dire, before the jury was organized, had been asked if they knew of the former verdict, this would not have disqualified them for sitting on the trial of this case.  A mere statement of the fact already known to them of appellant's former conviction is not such discussion of the former conviction as could in the nature of things have prejudiced him.  The statement of such fact in the jury room was not new information and stated no testimony which the jury did not already know. The authorities heretofore, on discussion of jurors in former verdicts, have not been uniform, but under the late authority of Smith v. State, 52 Texas Crim. Rep., 344, 106 S. W. Rep., 1161, we held that unless the testimony or the evidence shows that the jury were improperly influenced by a discussion of the former verdict and the evidence dehors the record, we will not reverse the case for said discussion."

In Morrison v. State, 39 Texas Crim. Rep., 519, this court said:  "It is not deemed necessary to discuss what effect the announcement in the jury room that appellant had previously been convicted and his punishment assessed at twenty years in the penitentiary, may have had on the jury.  The mere statement of that fact in the jury room may not have operated to the prejudice of appellant.  Before a case would be reversed on this ground some prejudice must be shown.  The bare statement that a former jury had tried the case and returned a certain verdict against defendant would not ordinarily cause a reversal."  See also Salazar v. State, 55 Texas Crim. Rep., 307.

Appellant complains that the court erred in refusing his motion for new trial, because the jury discussed and considered the fact that the defendant failed to testify.  Our statute permits an appellant to testify in his own behalf, but says the failure to so testify shall not be taken as a circumstance against him, nor shall it be alluded to or commented on by counsel in the cause.  We think it is now settled in our State that a mere casual reference to his failure to testify by either the State's counsel or any of the jurors in considering their verdict, does not present reversible error.  Every juror has absolute knowledge when the accused does not testify that he has not.  He is present, and must be, during the whole trial and the jury knows he has not testified when he does not. The court in this case in his charge told the jury that his failure to testify could not be used as a circumstance against him and that they could not use his failure to testify as a circumstance against him or consider it for any purpose whatever.  In considering appellant's motion for new trial on this ground the court heard only four jurors testify on the subject.  After hearing them he overruled the motion, thereby holding that the evidence was insufficient to authorize or require him to grant the new trial on that ground.  He heard the jurors testify and saw their manner of testifying.  Without reciting it, the evidence of these jurors was such as to justify him in overruling appellant's motion.  We think

the court did not err on this point. Long v. State, 48 Texas Crim. Rep., 175; Johnson v. State, 53 Texas Crim. Rep., 339; Sample v. State, 52 Texas Crim. Rep., 505; Jenkins v. State, 49 Texas Crim. Rep., 457; Parrish v. State, 48 Texas Crim. Rep., 347; Combs v. State, 55 Texas Crim. Rep., 334; Lesley v. State, 49 S. W. Rep., 73; Mason v. State, 81 S. W. Rep., 718; Smith v. State, 52 Texas Crim. Rep., *supra.*

Appellant complains that the court refused to give several of his special charges, numbering them. The only way this was presented in the lower court was the mere fact that appellant requested such charge and the court refused it. He then took one bill of exceptions, included all of his special charges by merely copying them and numbering them and then, in the same way, presented the question again in his motion for new trial. No reason in the requested charge nor in the exception showing its refusal nor in the motion for new trial, is stated why any or either of these special charges should have been given by the court. It is settled in this State that when such is the case this court can not review the refusal to give such a charge. Byrd v. State, 69 Texas Crim. Rep., 35, 151 S. W. Rep., 1068, and cases therein cited; Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878, and cases there cited; Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884, and cases cited. It is unnecessary to collate the many decisions to the same effect. However, we have looked over all of appellant's charges and where proper to have been given the court substantially embraced them in his main charge. So that in no event did the refusal of the court to give such charges show reversible error.

None of appellant's bills complaining of the argument of the county attorney show any reversible error. It is unnecessary to state or discuss them. Pierson v. State, 18 Texas Crim. App., 524; House v. State, 19 Texas Crim. App., 227; Tweedle v. State, 29 Texas Crim. App., 586. It is unnecessary to cite the many other cases to the same effect.

Each side, by several witnesses each, introduced testimony to various facts and circumstances showing and tending to show a state of ill-feeling, mistreatment and threats by appellant towards his wife and by her towards him. Appellant objected whenever the State introduced such testimony showing, or tending to show appellant's said state of mind and feeling towards his wife. It is unnecessary to state the various bills, the testimony objected to and the grounds thereof. All of this testimony was admissible for the purpose of showing malice and motive on appellant's part. Judge White, in sec. 1072, in his Ann. C. C. P., says, facts tending to show a motive, though remote, are admissible in evidence. Dill v. State, 1 Texas Crim. App., 278; Jones v. State, 4 Texas Crim. App., 436; Rucker v. State, 7 Texas Crim. App., 549; Mathis v. State, 34 Texas Crim. Rep., 39; McKinney v. State, 8 Texas Crim. App., 628; Hall v. State, 31 Texas Crim. Rep., 565; Gonzales v. State, 31 Texas Crim. Rep., 508. For many other cases noted by Judge White, see the above section and sec. 1231 of his Ann. P. C. The court qualified appellant's bills on this subject to the effect that he admitted this testimony

for the purpose of showing relationship and state of feelings between the defendant and his deceased wife for a period of time extending from about one year prior to the time of the homicide down to a short time prior thereto.

It would have been proper for the court to have permitted Mr. S. O. Scott to state that while he did not testify on the former trial, he was sworn, placed under the rule and was willing to testify but was not called by either party, but this is not a matter of any grave importance and would neither justify nor authorize this court to reverse because thereof.

There was no error in the court permitting the State to prove by the various witnesses what became of the mattress, to the effect that it was later burned; and of the bed clothes whereon deceased lay when she was killed, to the effect that they were washed. Because of the issue between the State and the appellant it would have been admissible to have introduced these articles on the trial, if the mattress had not been burned and the bed clothes had not been washed, for the purpose of showing and illustrating the effect of the other testimony in the case, but the court properly charged the jury as to these matters in response to appellant's special charges thereon that they could not take the fact that the defendant's mother or any other person took charge of the pillow slips and bed clothes on the bed upon which the deceased lay after her death, and did not produce the same in evidence, as a circumstance against him. The record in no way discloses that the State sought to show that said disposition had been made of said bed clothes by appellant, nor that the others who did it, did so from any improper motive or any improper purpose. Nor was there any error in permitting some of State's witnesses to testify the distance a person would have had to be from the deceased to have shot her where she was shot with the shotgun with which she was killed, nor any other experiments they had made, or experiences they had had, showing the effect of such shots, or the distance a person would necessarily have had to be to have had the effect and made the wound this shot did on the deceased.

It has not been necessary to take up each of appellant's bills of exceptions, nor his several grounds of the motion for new trial, nor his special refused charges. What we have discussed embraces all of the material matters. As stated above the record is voluminous. Able counsel on both sides have filed lengthy and forcible briefs each seeking to maintain the positions they assert and many authorities have been cited by them. We have deemed it unnecessary to take up and discuss these authorities. All of them have had our consideration. We have given all this a most thorough and careful consideration and have reached the conclusion that there is no error shown in this record that would authorize or justify this court to reverse this case. It, therefore, becomes our duty, as we see it, to affirm this case and it is so ordered.

*Affirmed.*

[Rehearing denied April 15, 1914.—Reporter.]