## Jim Vickers v. The State.

No. 3167.  Decided June 17, 1914.

Rehearing denied October 14, 1914.

**1.—Incest—Sufficiency of the Evidence.**

Where, upon trial of incest, the evidence was sufficient to support the verdict on a proper charge of the court, there was no error.

**2.—Same—Definition of Offense.**

Where defendant is charged with having had carnal intercourse with his stepdaughter, his contention that he was not guilty of any offense because they could have been legally married after the death of the mother is untenable, as both were guilty of the offense of incest.

**3.—Same—Evidence—Other Acts of Sexual Intercourse.**

Where, upon trial of incest, the defendant attacked prosecutrix's testimony as false and unreasonable, on cross-examination, because she claimed that the act of intercourse upon which the prosecution relied for a conviction was effected while the parties were standing up and that she conceived therefrom, there was no error in permitting the State to show other prior acts of sexual intercourse between the parties; besides, the same was admissible as original testimony.  Following Battles v. State, 63 Texas Crim. Rep., 147, and other cases.

**4.—Same—Other Acts of Sexual Intercourse—Charge of Court—Accomplice.**

Where, upon trial of incest, the alleged female testified for the State, and testimony of other acts of sexual intercourse prior to the one relied upon for conviction was admitted in evidence, and the court gave a proper charge on accomplice testimony and limited the prosecution to the act of intercourse relied upon by the State, there was no error in refusing a special charge on the same issues.

**5.—Same—Allusion to Former Conviction—Defendant's Failure to Testify.**

Where, upon trial of incest, the jury could not have drawn a reasonable inference that the State's counsel's indirect allusion to defendant's failure to testify at a former trial was in fact an allusion to defendant's failure to testify, and no injury being shown, there was no reversible error.  Following Gatlin v. State, 72 Texas Crim. Rep., 516, 163 S. W. Rep., 428, and other cases.

Appeal from the District Court of Williamson.  Tried below before the Hon. Chas. A. Wilcox.

Appeal from a conviction of incest; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

J. F. Taulbee and Richard Critz, for appellant.—On question of court's charge on accomplice testimony:  Capshaw v. State, 166 S. W. Rep., 737; Smith v. State, 58 Texas Crim. Rep., 106, 124 S. W. Rep., 919.

On question of allusion to defendant's failure to testify:  Gaines v. State, 53 S. W. Rep., 623; Leslie v. State, 49 S. W. Rep., 73; Dorrs v. State, 40 S. W. Rep., 311; Hare v. State, 56 Texas Crim. Rep., 6, 118 S. W. Rep., 544; Bradburn v. State, 65 S. W. Rep., 519.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted for incest and his punishment assessed at the lowest prescribed by law. This is the second appeal in this case. The first is reported in 69 Texas Crim. Rep., 628, 154 S. W. Rep., 578, from which a sufficient statement of the case can be seen.

The evidence of the corroboration on this trial is stronger than the record showed in the other appeal. None of the questions decided on that appeal are raised in this. The evidence was amply sufficient to sustain the conviction on this trial. In fact, appellant, neither in his brief, nor oral argument presenting the case, contested that point.

Our statute, article 487, Penal Code, says no man shall marry his wife's daughter. Article 488 is, no woman shall marry her mother's husband after the death of her mother. Article 486 is, all persons who are forbidden to marry who shall intermarry or carnally know each other, shall be punished by imprisonment in the penitentiary not less than two nor more than ten years. The technical name of this offense is incest. Appellant contends that because article 488 says 'no woman shall marry her mother's husband, *after the death of her mother,* that therefore the man who has carnal intercourse with his wife's daughter can not be guilty of incest, because, as he claims, the stepdaughter herself is not prohibited from marrying her stepfather *after the death of her mother.* Under no contingency do we think appellant's contention can be maintained. The stepfather in this case is charged with the offense. Clearly and without any doubt, he could be guilty under the very terms of the law, and we think there could be no question but what a stepdaughter could also be guilty.

Appellant's first bill shows that the prosecuting witness Mrs. Ollie Taylor, formerly Ollie Walston, in her direct examination, testified that in January, 1911, her stepfather, appellant, had sexual intercourse with her, fixing a specific time and place where the act occurred. On cross-examination she testified that she did not want to do it; that the appellant gave her 50 cents to do it; that she never would do it until he gave her the 50 cents, and that was the reason she did it; that she did not know whether she would have done it or not, if appellant had not given her the 50 cents; that the act was committed while she and appellant were standing up. The State was then permitted, over appellant's objections, in re-examination of her, to have her testify that the said act was not the first, but that he had been doing it to her ever since she was 14 years of age and at the time this act occurred she was between 17 and 18 years of age. Appellant objected to this latter testimony of other acts, because it was irrelevant, immaterial and prejudicial: that it threw no light on the transaction inquired about and might call for an answer that would show him guilty of rape, and was not in response to any matter brought out by him.

It is. clear from this record that appellant was attacking this witness and her testimony as unreasonable and false. He showed by her that when the prosecuting officers first heard of the claimed offense they interviewed her and she told them that this act was the only one appellant ever had with her and that she so told the grand jury when she was first before it. She explained why she so testified. The grand jury did not indict him when she first testified before it. It was when she appeared the second time and testified that this was not the only act appellant had with her, but that he had repeatedly before then had intercourse with her, and this relationship had existed since she was 14 years of age that the grand jury then indicted. And he inquired of her if the grand jury did not in effect tell her that her evidence was too unreasonable because of her testimony that this act was the only one appellant had ever had with her and that by it, they standing up at the time, she conceived and afterwards gave birth to a child. Thus it will be seen that by appellant on cross-examination, first bringing out what position the parties occupied when the act occurred, and attacking her testimony as unreasonable and false because she claimed that at this time she conceived, made it necessary for the State to meet this by proving, as it did, that this was not the first act but that this relationship and acts of the kind had frequently occurred since she was 14 years old and up to this time. If for no other reason, this testimony would have been admissible to meet appellant's contentions. But it is settled now in this State that prior acts of sexual intimacy between an accused and his young stepdaughter in an incest case is admissible as original testimony. Battles v. State, 63 Texas Crim. Rep., 147; Burnett v. State, 32 Texas Crim. Rep., 86; Barrett v. State, 55 Texas Crim. Rep., 182; Burford v. State, 68 Texas Crim. Rep, 295, 151 S. W. Rep., 538.

Unfortunately the decisions of this court until recently have not been uniform. Some of them have held that other acts than the one specifically charged in incest could not be proven. As shown in the Battles case such holding was contrary to the great weight of authority and to the decisions of this court holding such evidence inadmissible. Mr. Wigmore, in his exhaustive and elaborate work on Evidence, vol. 5, p. 44, as a note to his section 398, says: "This opinion merits the censure of the Texas bar; it not only overthrows exact precedents, but in so doing it introduces, upon the scantiest consideration, a heretical and inferior rule and creates unnecessary difficulties in the proof of this crime." Among other cases holding that other acts in incest cases can be shown, he cites Adams v. State, 92 S. W. Rep. (Ark.), 1123; People v. Stratton, 141 Cal., 604; People v. Koller, 142 Cal., 621; People v. Morris, 84 Pac. (Cal. App.), 463; Lipham v. State, 125 Ga., 52; State v. Judd, 109 N. W. Rep. (Ia.), 892; State v. Pruitt, 100 S. W. Rep. (Mo.), 431. And he cites a large number of other cases so holding in adultery, bigamy, crim. con., fornication and rape. See also People v. Turner, 102 N. E. (Ill.), 1036.

The court charged the jury as follows: "You are instructed that the witness Ollie Taylor, formerly Ollie Walston, is what is known in law as an accomplice; and with reference to the testimony of accomplices you are instructed that a conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of an offense. You are therefore instructed that you can not find the defendant guilty upon the testimony of the said Ollie Taylor, formerly Ollie Walston, unless you first believe beyond a reasonable doubt that the testimony of the said Ollie Taylor, formerly Ollie Walston, is true, and that it shows the guilt of the defendant, and unless you further believe beyond a reasonable doubt that there is other evidence in the case, outside of the testimony of the said Ollie Walston, tending to connect the defendant with the commission of the offense charged.

"You are further instructed that if there is any evidence before you with reference to any of the acts of intercourse between the defendant and Ollie Walston, other than the act alleged to have been committed on or about the first day of January, 1911, then you are instructed that the defendant is not on trial for such other acts, if any there were, and can not be convicted for such other acts, if any there were; but, any testimony with reference to such other acts can be considered by you, if you do consider it at all, only for the purpose for which it was admitted, and that is for whatever light, if any, it may shed upon the transaction for which the defendant is on trial—that is the alleged act of intercourse alleged to have occurred behind the chimney on or about the first day of January, 1911."

Appellant complains that the court committed reversible error in refusing to give his special charge as follows:

"As told in the main charge, the witness Ollie Taylor, formerly Ollie Walston, is an accomplice, and you are charged that an accomplice can not corroborate herself, and one part of an accomplice's testimony can not be considered by you as corroborative of another part, and in this connection you are told that this defendant is on trial for the alleged act of intercourse alleged to have occurred out by the chimney early one morning about Jan. 1st, 1911, and you are told you can not consider her testimony that there were other acts of intercourse than this alleged one, as corroborative that the one out by the chimney, if any, did in fact occur."

In our opinion this special charge was not authorized or required by the testimony, and that the court's charge above copied properly presented the question to the jury and was all that was necessary or proper to charge on the subject. It complies with the statute and our decisions. No complaint was made of the court's charge in the lower court or this. The objection is to the refusal of the court to give his special charge. The court, as shown above, in his charge, told the jury that they could not convict appellant on Ollie Taylor's testimony, unless

they believed it was true, and it showed the guilt of the defendant, "and unless you further believe beyond a reasonable doubt that there is other evidence in the case, *outside of the testimony of the said Ollie Walston,* tending to connect the defendant with the commission of the offense charged."

The only other question complained of is presented by appellant's third bill of exceptions. This bill shows that after the State had completed its testimony and rested and several witnesses had been put upon the stand by the defendant and it had been developed before the jury that this case had been twice before tried, and while appellant was on the stand as a witness in his own behalf, and had completed his testimony on direct examination, on cross-examination the district attorney, in a loud, threatening and angry voice and manner began cross-examining him and the following questions were asked, and answers given by him:

"Q. Did you love the woman you married? A. Yes, sir. Q. And love her now? A. Yes, sir. Q. Was she good to you? A. Yes, sir. Q. And kind and gentle? A. Yes, sir. Q. And loving? A. Yes, sir. Q. And she told you, like all the rest of them, she believed that you had ruined her daughter? A. She didn't. She kept me there for three months, and told me she believed I was innocent. Q. She told you—your own wife that loves you, that had never done you a wrong or injury, that you was the author of that child? Judge Critz objected to the form of the question. The court: The objection is sustained, argumentative. Q. Well, did she? A. She did, yes, sir. Q. Why did she do that? A. Well, you ask her. Q. I am asking you, Mr. Vickers, why did your wife of your bosom say that to you? A. I can tell you my reason for believing why, if you want to know. Mr. Taulbee: Now I insist that he be allowed to tell his reason, I think it is nothing more than fair to the witness. Q. And you have never even had an opportunity to do that before today have you? To which last question, the defendant then and there in open court excepted," for the reason in substance that this was an allusion to appellant's failure to testify on the former trials. The bill further shows that there had been two former trials, and that the appellant had testified in neither of them. The objections on this ground, the bill states, were not made in the presence of the jury; that after appellant had taken his bill, the court, in open court, instructed the jury to disregard the question. The court, in approving the bill, does so with this explanation:

"When the above question was asked, defendant's attorney arose and stated that he excepted to the question; I at once stated to the jury that they should disregard the question, and stated to counsel that they could put their ground of exception in the bill without there stating them. The examination proceeded at once, the whole incident occupying only a few seconds.

"Furthermore, there was no evidence before the jury that the defendant had not testified on the former trial, and nothing to indicate such

fact, unless the question excepted to as above presented, called attention to it."

In addition to this, the court charged the jury, in subdivision 6, as follows:

"You are further instructed, that if any juror in this case has any knowledge of any fact with reference to this case; or to any former trial of this case; or with reference to any witness in the case which may have been acquired by such juror from any source other than from the witnesses on the trial of this case; then, you are instructed to disregard such knowledge, if any, of such facts acquired from extraneous sources, and make no mention of same but you will confine your deliberations solely to the evidence introduced upon the trial of this case, and to the la; as given you in charge by the court."

We think by no reasonable construction, could the jury, by what is shown by this bill, have drawn the inference that it was an allusion to appellant's failure to testify on either of the former trials. And that what the court did, and the charges he gave on the subject, and the verdict of the jury fixing the lowest penalty, excludes any idea that the jury were in the slightest influenced by it.

Even if it could be considered that the question asked was an indirect allusion to appellant's failure to testify in the two previous trials, it could present no stronger case for reversal than where the appellant has not testified, and a slight, indirect and bare allusion to that fact had been made. And in such case this court has repeatedly held no reversible error is shown. See Gatlin v. State, 72 Texas Crim. Rep., 516, 163 S. W. Rep., 428, and cases cited; Coffman v. State, 73 Texas Crim. Rep., 295, 165 S. W. Rep., 939, and cases therein cited; Cooper v. State, 72 Texas Crim. Rep., 266, 162 S. W. Rep., 364, and cases therein cited.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied October 14, 1914.—Reporter.]